No. 77.—WILLIAM W. BERRY and others, plaintiffs in error, *vs.* JOHN R. MATHEWES and others, defendants in error.

[1.] The 4th Common Law rule of practice, which authorizes a continuance on appeal trials, for the purpose of making a substantial amendment to either declaration or answer, does not apply to Equity causes.

[2.] Where a bill was filed by several creditors, for the payment of separate and distinct demands against the stockholders of an incorporated company, and one of the complainants died pending the suit: *Held*, that the suit did not abate as to the other complainants, but that the name of the deceased complainant might be stricken out of the bill, and the other complainants proceed to obtain a decree for their separate debts.

[3.] Where exceptions have been filed to the defendant's answer, by the complainant, and he afterwards files his replication, and the cause is set down for trial, the Court will not hear the exceptions at the trial, but will consider them as having been *waived* by the complainant.

[4.] The 6th section of the Judiciary Act of 1799, and the 57th Common Law rule of practice, requiring the production of books and papers at the trial, upon ten days notice, do not apply to Equity causes.

[5.] Where a printed circular, produced by the defendants under notice from the complainants, was offered in evidence by the latter, to prove that a certain joint stock company had represented to the public, that they had been incorporated with a capital of $600,000 : *Held*, that it must first be proved that the defendants had *issued* and *circulated* the paper before it could be read in evidence against them.

[6.] Where the Court gives to the Jury substantially the charge as requested, and fairly submits the law arising upon the facts of the case to the Jury, a new trial will not be granted.

In Equity, in Habersham Superior Court.    Tried before Judge DOUGHERTY, April Term, 1849.

This bill was filed by the plaintiffs in error, returnable to April Term, 1843, as creditors of the Habersham Iron Works Company, against the defendants in error, as stockholders, seeking to make them liable *individually* for the debts of the corporation, on various grounds; all of which, on demurrer, were declared insufficient, except one, viz: " That large dividends had been distributed by the corporation to the stockholders, which ought to have been applied to the payment of the company's debts."    As to this, the bill was retained and leave given to complainants to amend. An amendment was made, for the result of which, see 1 *Kelly,* 519, *S. C.*

At April Term, 1847, there was a trial and decree, and an appeal taken to October Term, 1847. At April Term, 1849, the case being called in its order, John R. Stanford, one of the parties, and also counsel in the cause, moved a continuance, on the ground that he desired to make a substantial amendment to the bill, which he deemed material. The Court overruled the motion, and complainants excepted.

A motion was then made to amend, *instanter*, on the ground that that was the first term of the appeal; the death of one of the defendants having been suggested at the October Term, 1847, and parties made only at this term. The Court refused the motion, and complainants excepted.

The death of Philip Hudgins, one of the complainants, being suggested, the complainants' counsel moved a continuance to make parties. The Court overruled the motion, and complainants excepted.

The complaniants then moved the Court to decide upon several exceptions to defendants' answers, filed before the first trial, but never disposed of, although replication had been filed. The Court refused to hear them, and complainants excepted.

Defendants being called on to respond to a notice served by complainants, to produce various books and papers, on which notice was the affidavit of Stanford, that he believed the books to be in existence, and material to the cause, sundry books and papers were produced, and others named in the notice, were not. John R. Mathewes, one of the defendants, then swore that no such books and papers were in his power or possession, nor of Dobson or Frazer, two other defendants, whose agent he was. Complainants objected to this response; but the Court held it sufficient, as far as Mathewes was concerned, and that complainants were entitled to the benefit of the Statute as to the other defendants, on making the affidavit required by the Rule of Court; and that the affidavit of Stanford, on the back of the notice, made before the former trial, was insufficient for this purpose. To which decision complainants excepted.

Complainants offered in evidence a printed paper purporting to be a circular issued by the Habersham Iron Works Company, to obtain a practical mechanic to take charge of their Iron Works. The paper gave a description of the property of the company—the health of the country—the geography of the State—its miner-

al and agricultural productions—its rail-roads and canals, completed and projected—the mint—the gold mines—stage routes and mail arrangements—the extent of the navigation of the rivers of the State—their sources and mouth—the population of Habersham County, and the number of physicians therein, &c. &c. And among other things, that the " company had just been chartered with a capital of $600,000." This paper professed to be signed by no one, and was produced by defendants under notice.

The Court rejected the circular until proved to have been issued and circulated by the company. To which decision defendants excepted.

Counsel for complainants requested the Court to charge, " That the liabilities of the company included the capital stock thereof, and that the company was not authorized to declare a dividend among its stockholders, unless they had on hand property over and above their debts and liabilities."

The Court charged " that the capital stock of the company was a liability among the corporators themselves; and when the corporation was dissolved, and all debts due other persons paid, then the capital stock, as well as other things belonging to the company, should be divided among the stockholders, and as before stated, the company had no right to make dividends of such capital, until all debts were paid; and until that time, the profits only were subject to be distributed."

To which charge complainants excepted.

Counsel requested the Court farther to charge, " That the issue of assessment stock, without any thing being paid therefor by the stockholders, is nothing more nor less than a declaration of a dividend, and must be refunded as other dividends."

On this point the Court charged, " that if the capital stock had at any time been increased by assessments or otherwise, such increase was in the same condition as the original stock, and could not be legally abstracted, by way of dividends, any more than the original stock."

To which charge the complainants excepted.

The Court farther charged the Jury, that if the company had made any profits at or before the day they organized under the charter, and such profits did not become a part of the capital stock, they had a right to make a dividend thereof, and were not liable to creditors therefor, if solvent at the time."

To which charge complainants excepted.

And on these several exceptions, error was assigned.

JOHN R. STANFORD and H. COBB, for plaintiffs in error.

JOHN W. H. UNDERWOOD and T. R. R. COBB, for defendants.

*By the Court.*—WARNER, J. delivering the opinion.

[1.] The first ground of error assigned on the record is, that the Court below refused the complainant a continuance of his cause, for the purpose of making a substantial amendment to his bill, according to the provisions of the 4th Common Law rule of practice.

The complainant was not entitled, as a matter of *right*, to a continuance of his cause to make a substantial amendment to his bill. The 4th Common Law rule of practice does not apply to Equity causes. Amendments of bills pending on the Equity side of the Court on the appeal are to be allowed, according to the *practice in Courts of Equity*, at the discretion of the Court.

In this case the cause had been set down for trial, and replication filed to the defendant's answers. The amendment was not allowable as a matter of course, but some *special* reason ought to have been given to the Court why it had not been made before. *Story's Eq. Pleading*, 879, §§886, 887. *Whitmarsh vs. Campbell*, 2 *Paige's Rep.* 67. *Prescott vs. Hubbell et al.* 1 *Hill's Ch. Rep.* 217.

The discretion of the Court below in not allowing the amendment of the bill to be made *instanter* was, in our judgment, properly exercised.

[2.] The next ground of error assigned is, that the Court refused a continuance of the cause, on the suggestion of the death of Philip Hudgins, one of the complainants.

The bill is filed by sundry creditors against the defendants, who assert their *separate* and *distinct* claims, and the question is, whether the death of one of the complainants, having a *separate* and *distinct* demand from the other complainants, necessarily abates the suit as to them. In this case, the name of Hudgins, the deceased complainant, was stricken out of the bill, and the cause ordered to proceed in the name of the other complainants. The general rule is, that if any of the parties to a suit die, the suit abates. Mr.

Maddock, after stating the general rule, qualifies it by the following remarks :    " An abatement by death is occasioned only by the death of such as are  so far *material parties*, and concerned in interest, as to make it *necessary* to have their representatives before the Court, previous to a final determination of the cause."    2 *Maddock's Ch. Practice*, 526.

It does not appear to be *necessary* that the representatives of Hudgins should be before the Court to enable the surviving complainants to obtain a decree for their respective demands, and upon the score of *principle*, we do not see any good reason why the suit should abate as to the surviving complainants, who are creditors, seeking to enforce the collection of their *separate* debts, in which the deceased complainant had no interest.    See 3 *Daniel's Ch. Practice*, 1699.

[3.] The Court below did not err in refusing to decide upon the exceptions which had been filed to the defendant's answer before the first trial of the cause, at the appeal trial.    After the exceptions had been filed to the answer, a replication was filed thereto by the complainants, and one trial had.    The filing the replication was the complainant's answer or reply to the answer of the defendants.    2 *Madd. Ch. Practice*, 349.    The cause was set down for trial, and according to the 5th Equity rule of practice was at issue after replication filed.    *Hotchkiss*, 954.    By filing a replication, and setting down the cause for trial, the complainants *waived* their exceptions to the answers of the defendants.

[4.] The Court below did not err in its judgment in refusing the complainants the *benefit* claimed by them, under their *notice* to produce certain books and papers, as specified in the 6th section of the Judiciary Act of 1799, for the reason, that Statute, and the 57th Common Law rule of practice, do not apply to causes pending on the *Equity* side of the Court.

The 6th section of the Judiciary Act of 1799, provides that the Superior and Inferior Courts, on ten days' notice, shall have power to require the production of books, and other writings from the opposite party, on the trial of causes, cognizable before them respectively, which shall contain evidence pertinent to the cause in question, under circumstances where such party might be compelled to produce the same, *by the ordinary rules in Equity ;* and if the plaintiff shall fail or refuse to comply with such order, it shall be lawful for the Court, on motion, to give judgment against

such plaintiff, as in case of *nonsuit;* and if the defendant shall fail
or refuse to comply therewith, the Court, on motion, shall give
judgment against such defendant, as in case of judgment by *de-
fault. Prince*, 420. The object of this Statute was to give to the
Courts of *Law*, the same power to compel the production of books
and papers which Courts of Equity possessed; and that the books
and papers required to be produced on the *trial of causes*, were
such causes as might be pending on the *Common Law* side of the
Court, and not *Equity* causes, is manifest from the judgment to be
rendered, in case either the plaintiff or defendant failed or refused
to comply with the order of the Court. Courts of Equity do not
award judgments of *nonsuit* nor judgments by *default*. Besides,
Courts of Equity, independent of that Statute, had, and now have,
ample power and jurisdiction to compel the production of books
and papers which may be necessary or material, upon the trial of
causes in that Court. As to the power and authority of a Court
of Equity, to require the production of books and papers by the
defendant and the complainant, necessary and *material* for the tri-
al of the cause, see 3 *Daniel's Chancery Practice*, 2038, 2069.
*Kelly vs. Eckford*, 5 *Paige*, 548. *Watson vs. Rennick*, 4 *John.
Ch. Rep.* 381. *Watts vs. Lawrence*, 3 *Paige*, 159. By our 17th
rule of Equity practice, "copies of all deeds, writings, and other
exhibits, shall be filed with the bill or answer, and *no other exhibits
shall be admitted*, unless by *order* of the Court, for some *special*
and good cause shown. The production of the original, if not ad-
mitted by the answer, may be required on the hearing; and upon
application to the Court, or to the *Judge in vacation*, and cause
shown, the *original* of any exhibit will be *ordered* to be deposited
in the Clerk's office, for the inspection of the adverse party."
*Hotchkiss*, 955. It will be perceived that our own Equity rule
of practice makes ample provision for the production of books and
papers, upon *sufficient cause shown* to the Court, or to the Chancel-
lor in vacation, for that purpose. The affidavit, in this case, of
the party seeking to make the notice available, would not have
been sufficient, if the trial of the cause had been in a Court of
Law, according to the 57th Common Law rule of practice. The
party making the affidavit must not only state that the books and
papers are *material*, but he should also state in what *particular*
the same are material, that the Court may judge of their materi-
ality; for unless *the Court* shall be of opinion that the books and

papers sought to be obtained are *material to the issue*, the notice is not available.   *Hotchkiss*, 950.   The rule does not contemplate that the party notified to produce books and papers shall be placed in the power of the opposite party, simply because *he* may deem them material.

[5.] The rejection of the paper circular offered in evidence on the part of the complainants, and which was produced by the defendants under notice, without proof that it had been *issued* and *circulated* by the defendants, constitutes no ground of error.   The general rule undoubtedly is, that when a party produces a written instrument under a notice from his adversary, to which he is a party, and claims a beneficial interest under it, such written instrument may be read in evidence without proof of its execution. *Orr vs. Morrice*, 7 *English Com. Law Rep.* 382.   This paper was signed by no one, and was offered to show that the Habersham Iron Works Company had held out to the world that they had obtained a charter with a capital stock of $600,000.   This paper was extracted from the possession of the defendants; there was no evidence they had ever *issued* or *circulated* it, or copies of it, and consequently, nobody was deceived by it.   So long as it remained in the defendants' possession, it was perfectly harmless; they claimed no *beneficial* interest under it; and until issued and circulated by them, no injury resulted to any body from it.

[6.] With regard to the request of the complainants' solicitors of the Court to charge the Jury, and the charge as given, as the same appears in the record before us, we do not find there is any error.   The Court, in our judgment, gave to the Jury, as the law of the case, substantially the instructions requested.

The object of the complainants was to make the defendants liable for the amount of *dividends* which they alleged the company had declared and paid to the stockholders, when the company was *insolvent*.   These questions, we think, were fairly submitted to the Jury by the Court in its charge, and afford no ground for the reversal of the judgment.

Let the judgment of the Court below be affirmed.