HENRY BALD, SR., *et al*. Appellants, *vs*. LOUIS G. NUERN-BERGER, Appellee.

*Opinion filed April 22, 1915.*

1. EVIDENCE—*statements of owner of land in disparagement of title are admissible against him and his grantee.* A sale bill caused to be printed by the owner of land, in which he states that his farm contains a certain number of acres, is admissible in evidence against a subsequent grantee of the land in an action of ejectment to recover a tract of land originally a part of the farm and conveyed by the owner by metes and bounds before the making of the sale bill.

2. LIMITATIONS—*when an instruction as to bar of twenty year statute is erroneous.* An instruction in an action of ejectment is erroneous which tells the jury, in effect, that if the plaintiffs became seized of the legal title to the piece of land in controversy more than twenty years prior to the commencement of the suit their right to bring ejectment was barred, where one of the principal controversies in the case is whether the possession of the defendant and his grantor has been adverse or permissive.

3. SAME—*permissive possession does not satisfy the Statute of Limitations.* Possession of a strip of land by permission of the owner of the legal title cannot be made the basis of a claim of title under the Statute of Limitations, as the possession contemplated by such statute must be adverse, and the question whether possession is permissive or adverse is one of fact.

4. INSTRUCTIONS—*rule where some instructions state the law incorrectly.* While instructions may supplement each other yet each one must state the law correctly as far as it goes and all must be in harmony, since, if some instructions state the law incorrectly and others correctly, a court of review cannot say which instructions the jury followed.

5. DEEDS—*in case of doubt a provision will be construed as a covenant rather than a condition.* If it is doubtful from the language used whether a provision in a deed was intended as a covenant or a condition subsequent the provision will be construed to be a covenant, particularly where there is no re-entry clause or other words or terms which are the usual indications of an intent to create a condition subsequent.

APPEAL from the Circuit Court of St. Clair county; the Hon. LOUIS BERNREUTER, Judge, presiding.

TURNER & HOLDER, for appellants.

SCHAUMLEFFEL & JOHNSON, for appellee.

Mr. JUSTICE CARTER delivered the opinion of the court:

This was an action in ejectment by appellants, the trustees of the Dutch Hill Methodist Episcopal Church, against appellee, in the circuit court of St. Clair county, to recover a little less than an acre of land situated in said county. On the trial in that court the jury returned a verdict in favor of appellee. There was a judgment on the verdict, and this appeal followed.

February 3, 1868, John Hardy (being then the owner of eighty acres of land, of which the land here in controversy is a part,) and his wife conveyed to the then trustees of the Dutch Hill Methodist Episcopal Church a piece of land described as commencing at the southwest corner of the southwest quarter of the northeast quarter of section 10, township 3, south, range 7, in the middle of the Kaskaskia road; running east five and one-half poles; thence north forty poles; thence west five and one-half poles to the middle of said Kaskaskia road; thence south forty poles to the place of beginning. The organization in question built a church near the north end of this strip of land, and also established a burial ground a little further south on the strip, enclosing the church and cemetery with a fence but leaving the southern end of the strip unfenced. John Hardy died in 1882, testate, leaving by his will the entire eighty acres in which this strip of land is situated to his son Jacob Hardy, said eighty acres being described by its legal description in the will and no mention made of any exception therefrom. John Hardy, after conveying said strip to the church, cultivated the south end of the strip that was not fenced in by the church. After his death his son Jacob Hardy continued to cultivate the same strip, and later, in 1898, rented it to Fred Beck until the time he removed to the State of Missouri, in 1903. Beck continued to cultivate the part of the strip south of the church

and cemetery until Hardy sold his land to appellee. On June 20, 1905, Jacob Hardy and his wife, by warranty deed, conveyed to appellee all of the eighty acres except the part fenced in for the church and cemetery, (being the northern end of the strip conveyed to the church,) including in the deed the south 347 feet of said strip originally deeded to the church. In this transaction Henry Hardy, a brother of Jacob, acted as the latter's agent in this State. There is evidence in the record tending to show that Jacob Hardy said to one or more persons that the strip of land here in dispute belonged to the church; that he was using it with the consent of the trustees. Appellee testified on the trial that he did not know whether Jacob Hardy owned the land or not; only that said Jacob, and his father before him, had cultivated it for years. It appears also that before appellee purchased the eighty acres he had the records examined and did not find the deed of 1868 from John Hardy to the church, although it had been recorded shortly after it was executed. He and Henry Hardy, according to all the testimony, obtained the description for the deed by going out and measuring the land south of the fence around the church and cemetery lot, and they thereupon included said 347 feet south of said church and cemetery lot in the deed executed by Jacob Hardy. Henry Hardy testified that he had understood that the strip here in dispute belonged to the church, but he was told by appellee that there was no deed of the same of record and therefore supposed the land belonged to his brother and had it included in the deed; that he omitted from the deed the church property as he concluded it to be. The testimony of the owner, Jacob Hardy, is not in the record. Some testimony is also found in the record indicating that the present trustees of said church did not have any positive information as to the ownership of this disputed tract until a short time before the beginning of this suit.

Appellants contend that the court erred in refusing to admit certain testimony. Counsel offered in evidence on the trial a printed sale-bill by Jacob Hardy stating his farm to contain 118 acres, which, they argue, shows that Jacob Hardy in 1903, at the time he was offering his property for sale, did not claim to own the tract here in dispute. It is well settled that declarations in disparagement of the title of the declarant are admissible as original evidence, and the admissions of one person are also evidence against another in respect of privity between them. The admissions must be made while the title to the property in question is in the declarant. (*City of Elgin* v. *Beckwith,* 119 Ill. 367; *Waggoner* v. *Cooley,* 17 id. 239; 1 Greenleaf on Evidence,—16th ed.—secs. 152*c,* 189; 12 Ency. of Evidence, 567, 569; Jones on Evidence,—2d ed.—sec. 352.) Under these authorities the evidence as to Jacob Hardy's declarations as to whom the strip in question belonged was admissible, not only against him but against appellee, who was his grantee. For the same reason, when it is shown that a person is the author of or responsible for a statement or advertisement in disparagement of title it may be used against him or his grantee. (Jones on Evidence,— 2d ed.—sec. 582; *Dennis* v. *VanVay,* 28 N. J. L. 158; *Barry* v. *Mathewes,* 7 Ga. 457; *Mann* v. *Russell,* 11 Ill. 586.) If the proof indicated that Jacob Hardy was responsible for the poster sale-bill in question, the poster, and the evidence showing his connection with it, were admissible.

Counsel for appellants further argue that the court erred in giving the first instruction for appellee, which reads:

"The court instructs the jury that under the law of this State no person shall commence an action for the recovery of lands unless within twenty years after he or those from whom he claims have been seized or possessed."

This instruction is, in substance, a part of section 1 of the Illinois Limitation statute. That section, however, concludes with the clause, "except as hereinafter provided."

One of the principal controversies in the record here was whether appellee and his grantor had held the strip here in dispute adversely more than twenty years. This instruction ignored entirely the question whether the possession was adverse. It told the jury, in effect, that if appellants in this case became seized of the legal title to this piece of ground more than twenty years prior to the commencement of this suit their action to recover was barred, ignoring absolutely any circumstances under which the possession of other parties might have been gained without being a bar to appellants.

Counsel for appellants contend that under the evidence in this case it was shown that the possession of the strip in dispute was by permission and acquiescence of the real owner, without any claim of ownership on the part of the one who was cultivating it, and that the statute, under those circumstances, could never run against the real owner. In order to hold title under adverse possession permissive possession is not sufficient. (*Shaw* v. *Schoonover,* 130 Ill. 448; *Brettmann* v. *Fischer,* 216 id. 142; *Page* v. *Bellamy,* 222 id. 556.) Whether possession is adverse or permissive is a question of fact. *Carroll* v. *Rabberman,* 240 Ill. 450.

Counsel for appellee practically concede that the above instruction, taken by itself, incorrectly states the law, but they argue that it could have done no harm because the instructions must be taken as a series and several of those given for appellants stated the law correctly. This court has frequently held that instructions may supplement each other, but each one must state the law correctly as far as it goes, and they should be in harmony, so that the jury will not be misled. The jury are not able to select from contradictory instructions one which correctly states the law. (*Illinois Iron and Metal Co.* v. *Weber,* 196 Ill. 526; *Ratner* v. *Chicago City Railway Co.* 233 id. 169; *People* v. *Lee,* 248 id. 64; *People* v. *Novick,* 265 id. 436.) This instruction stated the law incorrectly, and even though there

may have been correct instructions it is impossible to tell which ones the jury followed. An instruction no more harmful than this was held reversible error on a very similar question in *Rich* v. *Naffziger,* 248 Ill. 455.

Counsel for appellee insist that there was a variance between the amended declaration and the deed to the church trustees from John Hardy, their argument being that the amended declaration states the description as beginning at the middle of the Kaskaskia road while the deed begins the description at the quarter corner, and that the evidence tends to show that the quarter corner was not at the middle of the road. While there is some evidence introduced by appellants that tends to show that the center of the Kaskaskia road was not the west line of said quarter section, the great weight of the testimony introduced shows that the two coincide. In the present condition of the record the court should have sustained the objection of counsel for appellee to the introduction of the plat tending to show that the center of the road and the quarter section line were not coincident.

Counsel for the appellee further contend that the court erred in refusing to instruct the jury that the title to the strip of land in dispute had reverted to the original grantor under the following provision contained in the deed from said John Hardy and wife to the church: "The above described land being deeded in trust that said premises shall be used, kept, maintained and disposed of as a place of divine worship for the use of the ministry and membership of the Methodist Episcopal Church in the United States of America, subject to the discipline and ministerial appointment of said church as from time to time authorized and declared by the general conference of said church and the annual conference in whose bounds the said premises are situate." It is argued by counsel for appellee that this provision of the deed is a condition subsequent, and that as the strip here in dispute had not been used for church pur-

poses but had been cultivated ever since the deed was made, the grantor, John Hardy, considered the condition subsequent broken and had re-entered upon said land and taken possession of it. It is frequently difficult to determine whether a certain provision in a deed annexed to a grant of real property constitutes a condition, covenant, restriction, limitation or trust imposed on the property. If from the language, however, it is doubtful whether the clause is a condition or a covenant it will be construed to be a covenant. (*Koch* v. *Streuter,* 232 Ill. 594; 2 Devlin on Real Estate,—3d ed.—sec. 970*b.*) A covenant is an agreement duly made between the parties to do or not to do a particular act. (2 Words and Phrases, 1691, and cases cited.) Conditions subsequent, having the effect of divesting estates already vested, are not favored in law and always receive a strict construction. (*Springfield and Northeastern Traction Co.* v. *Warrick,* 249 Ill. 470.) There is nothing in the form of the language in the deed in question to indicate that it was intended that the conveyance was upon a condition subsequent. No words or terms show a condition of any kind and no words of equivalent meaning are found in the deed. There is no re-entry clause. These are the usual indications of an intent to create a condition subsequent. (*Gallaher* v. *Herbert,* 117 Ill. 160; *Downen* v. *Rayburn,* 214 id. 342; 3 Ann. Cas. 36, and cases in note; see *Brown* v. *Concord,* 33 N. H. 285; *Farnham* v. *Thompson,* 34 Minn. 330.) Under the authorities we think the provision in the deed in question must be considered a covenant and not a condition subsequent.

Other questions are raised in the briefs, which, in view of the conclusions we have reached, need not be considered.

For the errors indicated the judgment of the circuit court must be reversed and the cause remanded.

*Reversed and remanded.*