HENRY BALD, SR., *et al.* Defendants in Error, *vs.* LOUIS
G. NUERNBERGER, Plaintiff in Error.

*Opinion filed June 22, 1916.*

1. EJECTMENT—*declarations of the party in possession are admissible to show that possession was permissive.* In an action of ejectment where the only claim of the defendant is based upon twenty years' adverse possession by himself and his grantors, statements made by the defendant's grantor are admissible to show that his possession of the premises was permissive and not adverse.

2. SAME—*rule where possession is permissive in its inception.* If the possession of land is given by permission of the owner it cannot become hostile and adverse until the party in possession has done some act equivalent, under the circumstances of the case, to a repudiation of the permissive character of the possession and an assertion of ownership in himself. (*Knight* v. *Knight,* 178 Ill. 553, distinguished.)

WRIT OF ERROR to the Circuit Court of St. Clair county; the Hon. GEORGE A. CROW, Judge, presiding.

SCHAUMLEFFEL & JOHNSON, for plaintiff in error.

TURNER & HOLDER, for defendants in error.

Mr. CHIEF JUSTICE CRAIG delivered the opinion of the court:

Defendants in error sued plaintiff in error in an action of ejectment in the circuit court of St. Clair county. There was a verdict and judgment in favor of the defendant, from which the plaintiffs appealed to this court, where the judgment was reversed and the cause remanded to the circuit court of St. Clair county for a new trial. (*Bald* v. *Nuernberger,* 267 Ill. 616.) The claims of title of the parties to the property in controversy are fully set out in the opinion in that case. After the case was remanded by this court it was again tried in the circuit court of St. Clair county, resulting in a verdict and judgment in favor of the plaintiffs in the ejectment suit. The defendant (plaintiff in error here) has sued out a writ of error from this court to re-

verse the judgment, assigning as error the admission of certain evidence in behalf of plaintiffs, the refusal of proper evidence offered for the defendant, the giving and refusing of certain instructions, and the refusal to give a peremptory instruction finding for the defendant because of a variance in the description of the land described in the declaration and the land described in the deed to the plaintiffs and which they were seeking to recover.

The evidence admitted against the objections of plaintiff in error consisted of statements made by Jacob Hardy, a former owner, who had sold the land to plaintiff in error, to the effect that he never claimed to own the strip of land in controversy; also a statement by one of his tenants that Hardy had stated that the land belonged to the church and that he would have to give it up if they asked for it, and an admission in the deposition of Hardy that he had made such statement. In *Bald* v. *Nuernberger, supra,* it was held that such evidence was proper. The only claim of the plaintiff in error to the land in controversy was based upon twenty years' adverse possession by himself and his grantors, and it has always been held that to establish title by adverse possession such possession must be, in fact, hostile and adverse. In such cases the character of the possession is always largely a question of fact and of intention. If it is permissive or with no intention of claiming adversely to the true owner, such possession, of course, will not be adverse, and declarations of the party in possession are admissible as showing that his possession was permissive or not adverse.

It is claimed that a plat drawn by a surveyor, one Krebs, a witness for the defendants in error, was improperly admitted in evidence because it contained references to surveyors' records not contained in the evidence. There is no objection in the record to this plat. An assessor's plat, so called, was admitted in evidence against the objection of plaintiff in error. It was identified as a copy made from

one of the books of record of the county used in the preparation of the assessors' books. We infer that it was such a plat as is authorized and required by sections 62 and 63 of the Revenue law, (Hurd's Stat. 1913, p. 2035,) and would be competent evidence in some cases but not in this case, where the only issue was the title to the premises in controversy. Only a general objection, however, was made to its introduction, and there were other plats and drawings of the premises in controversy and the surrounding land in evidence similar to the one objected to. We do not think its admission was harmful under all the circumstances.

Complaint is made of the action of the trial court in sustaining objections to certain cross-questions. Defendants in error proved that a stone was set in the center of the Kaskaskia road, at the southwest corner of the northeast quarter of section 10, in 1857 by Frederick Graner, then county surveyor. In 1874 another surveyor, Hugo Ropiequet, discovered that there was an overplus in the section, and afterwards, in apportioning this overplus between the east and west halves of the section, a stone was placed some eighteen or twenty feet west of the corner stone placed by Graner. The cross-questions to which objections were sustained called for the knowledge of the witnesses as to the stone west of the corner stone. They would only have been misleading and objections thereto were properly sustained. This evidence also was not very material. There was never any question raised as to east and west boundaries of the tract of land in controversy and the location of the same with reference to the north and south quarter section line and the Kaskaskia road. The tract in dispute was a strip of land extending from the south line of the quarter section north to the premises fenced in and occupied by the church and cemetery.

As to the contention that there is a variance between the premises described in the declaration and the premises described in the deed offered in support of the title of de-

fendants in error, we think it clearly appears from the evidence that the original corner stone in the center of the Kaskaskia road was the southwest corner of the northeast quarter of section 10 and also the southwest corner of the tract in dispute. Measuring from this stone, which was found since the former trial in the center of the Kaskaskia road by digging for the same, and taking it as the center of the Kaskaskia road both at the time the deed was made and at the present time, there is no material variance between the descriptions of the tract in the deed and in the declaration. The description in the deed calls for a tract commencing at the southwest corner of the southwest quarter of the northeast quarter of section 10, in the middle of the Kaskaskia road; running east five and one-half poles; thence north forty poles; thence west five and one-half poles to the middle of the Kaskaskia road; thence south forty poles to the place of beginning. The defendants in error had possession of said tract except the south 347 feet. The declaration describes the tract as beginning at the middle of the Kaskaskia road, on the south line of the southwest quarter of the northeast quarter of section 10; running thence east five and one-half rods; thence north 347 feet; thence west five and one-half rods to the middle of the Kaskaskia road; thence south 347 feet to the place of beginning, etc. It is contended by the plaintiff in error that the words "in the middle of the Kaskaskia road" should be regarded merely as descriptive, the corner of the quarter being the real starting point. The Kaskaskia road runs north and south, and as shown by the evidence is in the same place now that it was when the deed was made, which was in 1868. At that time, according to the surveys and monuments established to mark the same, the middle of the road where it intersected the south line of the southwest quarter of the northeast quarter of section 10 was also the southwest corner of the quarter. It does not appear that the quarter section corner has ever been definitely located at

any other point. The question of variance was also passed upon by this court in the former appeal. (*Bald* v. *Nuernberger, supra.*) We gather from the evidence that the center line of the road is the quarter section line, which being true, there is no material variance.

The fifth instruction given on behalf of defendants in error is objected to. It states, in substance, that to acquire a title by twenty years' adverse possession the possession must be hostile from the beginning; that if the jury believed that Jacob Hardy, grantor of plaintiff in error, had possession of the premises by permission of the defendants or their predecessors, as trustees of the church, his possession could not become hostile until he repudiated the rights of such persons and declared that the land was his own. This instruction is not objectionable when applied to the facts of this case. The facts were different in *Knight* v. *Knight,* 178 Ill. 553, cited by counsel for plaintiff in error. In that case the owner of premises had given a deed to the same but remained in possession. It was held such owner could acquire title by twenty years' adverse possession after giving the deed, and that in an action of ejectment for the premises, in which the jury were otherwise properly instructed as to the law, certain instructions were properly refused as misleading which informed the jury that possession of the grantor in the deed could not be regarded as hostile unless it appeared that such grantor had formally disclaimed the title conveyed by his deed and orally asserted that he was the owner notwithstanding the deed. The instruction in question in this case was based upon the theory that the original possession was permissive, and in such cases it is a general rule that the statute does not begin to run until the permissive character of such possession is terminated by some act of the party in possession, equivalent, under the circumstances, to a repudiation of the permissive possession, from which time the statute will commence to run. *Grand Tower Mining Co.* v. *Gill,* 111 Ill. 541.

A review of the entire record shows that most of the questions raised were touched upon and disposed of in *Bald v. Nuernberger, supra,* and on the second trial the decision in that case seems to have been followed by the trial court. In brief, the owner of the land in dispute and in whom was the common source of title conveyed the same by deed to the predecessors of defendants in error, as trustees of the Methodist Episcopal Church of Dutch Hill, and their successors, and said grantees had title to the same. Neither plaintiff in error nor his grantors ever acquired title thereto by twenty years' adverse possession. The grantors of plaintiff in error never claimed or had any intention of claiming title to the land in controversy.

The judgment of the circuit court will be affirmed.

*Judgment affirmed.*