(No. 34928.—

RAY WALTER, Appellant, *vs.* VIOLET CLARK JONES *et al.*, Appellees.

*Opinion filed November 26, 1958.*

HERSHEY, J., took no part.

JOHN W. COALE, and DANIEL G. REESE, both of Taylorville, for appellant.

HERSHEY & BLISS, of Taylorville, (WILLIAM J. MEYER, JR., of counsel,) for appellees.

Mr. JUSTICE KLINGBIEL delivered the opinion of the court:

Ray Walter brought an action in ejectment against Violet Clark Jones and others in the circuit court of Christian County. The complaint alleged that plaintiff holds legal title to the south 57 acres of the west 71 acres of the north half of the southwest quarter of section 9, township 12 north, range 2 west of the third principal meridian;

that defendant Violet Clark Jones is the owner of the north 14 acres of said west 71 acres; and that defendants are wrongfully in possession of a strip of land about 80 feet in width immediately south of said 14 acres, which strip is a part of plaintiff's land. Defendant Jones filed an answer alleging ownership of the strip of land by adverse possession. The cause was heard by the court without a jury, at the conclusion of which hearing judgment was rendered for defendant. Plaintiff appeals, contending the evidence is not of sufficient weight to warrant a finding that title was acquired by adverse possession. Since a freehold is involved the cause is properly before this court on direct appeal.

There is no dispute as to the record title. On and prior to December 5, 1925, the entire 71-acre tract was owned by one John B. Colegrove. On that date he conveyed the north 14 acres to Jennie Seibert. She and her husband occupied it until 1929, when she reconveyed to Colegrove. By mesne conveyances Edward and Millie Kenetz acquired title in 1932, and they conveyed to defendant in 1941. On October 1, 1955, defendant deeded the 14 acres to Albert and Donna Gherardini, who reconveyed to her in 1957. The Gherardinis remained in possession as tenants. The remaining 57-acre tract owned by John B. Colegrove was sold at a foreclosure sale in 1931, and after various conveyances it was purchased by the plaintiff on April 2, 1943. Prior to that date he had farmed the land as a tenant of Colegrove.

The property in dispute measures 80 feet in width from north to south, and 2,090 feet in length east and west. It comprises about four acres in area, of which only about one-half acre is suitable for cultivation. The east three fourths of the strip is sloping and covered with brush patches. The west portion has some trees. In 1927, after the Seiberts acquired the north 14 acres, they erected a fence 20 inches high and about 200 feet long, for a hog

lot, in about the same place where the defendant now claims the boundary to be. At that time Seibert asked Colegrove, the owner of the property to the south, whether he wanted a survey made to determine the boundary line. Colegrove replied that he did not, and told Seibert to build the fence at his own judgment. Seibert testified he farmed the land north of the fence with Colegrove's permission.

When Kenetz took possession in 1932, the 200-foot section of fence was still standing. Neither Kenetz nor his wife was living at the time of the trial. According to the testimony of a neighbor, Kenetz farmed and pastured the land in question and threatened to shoot any cattle that broke through his fence line, which then extended clear through. In 1939 the defendant, Violet Jones, became interested in buying the 14-acre tract and examined the property. She testified that the fence then extended the entire length of the tract and that the wire was old and brittle and the posts rotten or decayed. She further testified that Kenetz stated the property ran from the north fence to the south fence. She occupied the tract, including the disputed strip, until 1955. During that period she farmed the one-half acre of the disputed strip that was farmable, used part for pasture and planted some trees thereon. She also built a garage, with the plaintiff's assistance, which extended into the disputed area. Violet Jones testified further that during the period of her occupancy she maintained the fence on the south, replacing worn out wire and posts from time to time but never changing its location; that when plaintiff's cows came through the fence she told him he had better fix it, and he put up another strand of wire; and that at no time did he make any assertion of ownership to the property north of the fence.

In 1946 the plaintiff married the daughter of Violet Jones, and a friendly and normal family relationship existed between them. He was permitted to let his cattle in through the south fence to pasture on portions of the property

north of the fence which were not farmed, and defendant's sheep were allowed to pasture on plaintiff's land. There was no dispute as to the boundary until after Gherardini purchased the 14-acre tract in 1955. The plaintiff began to remove the fence, whereupon Gherardini objected, claiming ownership of the land north of it. The plaintiff then obtained a survey of his tract, which disclosed that the Gherardinis were in possession of a portion of land belonging to the 57-acre tract. They continued to occupy the north 14 acres, including the disputed strip, at the time the present action was brought, although they had reconveyed the property to Violet Jones in November, 1957.

The plaintiff testified that when defendant acquired the 14 acres there was very little fence, if any; that there were a few posts at the east end without any wire; and that he set posts and put on barbed wire. He built about a quarter-mile of fence from a point near the east line, so as to enclose some corn stalk ground for pasturing purposes. He testified that the fence was not intended as a division fence but was put there temporarily as a stock fence; and that he pastured on both sides of it every year except the last two years.

The plaintiff contends the evidence is insufficient to establish the defense of adverse possession; that any possession of the disputed strip by defendant and her predecessors prior to 1955 was permissive rather than adverse or hostile; and that in any event proof of adverse possession was not clear and unequivocal with respect to the boundary of the area claimed. The rules of law applicable in cases of this kind are well established. Where the plaintiff in an action of ejectment has proved a connected title from the United States, the presumption is that such title is valid, and that possession of the real estate is subservient to the rights of the owner of the record title. The burden of producing evidence to overcome the presumption is on the defendant; and the proof to establish title by adverse

possession must be clear, positive and unequivocal. (*Clavey v. Bobzien,* 6 Ill.2d 549.) It must show a definitely defined tract; that the possession thereof was hostile, actual, visible, notorious and exclusive; and that such possession was continuous for twenty years or more under claim of ownership. (*Schwartz v. Piper,* 4 Ill.2d 488.) Where the original possession is permissive and consistent with the title of the true owner, it will not become adverse, so as to start the running of the Statute of Limitations, until the party in possession has done some act equivalent, under the circumstances of the case, to a repudiation of the permissive character of the possession. *Bald v. Nuernberger,* 274 Ill. 123; *Thompson v. Toledo, St. Louis and Western Railroad Co.* 271 Ill. 11.

To constitute a bar under the statute, however, it is not necessary that the possession be accompanied by an express declaration or claim of title. It is sufficient if the proof shows that the party in possession has acted so as to clearly indicate he did claim title; and that he has been in actual, visible and exclusive possession for 20 years with acts of ownership during that period. (*Augustus v. Lydig,* 353 Ill. 215.) The acts required to accomplish adverse possession may vary, depending upon the nature of the property itself and the uses to which it is adaptable. (*Hunsley v. Valter,* 12 Ill.2d 608.) The possession is not required to be more full than the character of the land admits. A fence is notice of actual occupancy; and such acts of dominion over land as will indicate to persons residing in the immediate neighborhood who has the exclusive management and control of the land are sufficient to constitute possession. *Chicago Title and Trust Co. v. Darley,* 363 Ill. 197.

Applying the foregoing rules to the evidence in this record we think the trial court was justified in its conclusion. While the initial possession by the Seiberts in 1925 may have been permissive in character it is evident that

Kenetz, who purchased in 1932, claimed ownership to the fence line. His conduct, as testified to by neighbors, is entirely inconsistent with a permissive occupancy. It is also clear that the defendant, who bought in 1941, as well as her subsequent grantees, understood that the fence marked the southern boundary of the tract. She maintained and rebuilt it, and used the land for the only purposes for which it was suitable. She farmed a small portion, planted trees and pastured livestock thereon. The land is hilly, largely covered with brush patches, and not suitable for general farming. It appears that little more could have been done by defendant and her predecessor in title to show their intention to exercise dominion over it. The fence was visible for a considerable distance from the road which runs north and south along the west line of the tracts involved here, and indicated to plaintiff and other persons residing in the neighborhood that it was the boundary separating the two tracts. While the plaintiff occasionally pastured his livestock on property north of it, the testimony indicates this was done with permission of defendant Violet Jones, and not with a claim of right. Not until the survey was made did the plaintiff make any assertion of ownership to property north of the fence. Prior to that time neither plaintiff nor defendant knew the true boundary line, and there is little indication that plaintiff was aware of the fact that the fence encroached upon his land. Under such circumstances it is highly unlikely that defendant's possession could have been permissive. See *Cassidy* v. *Lenahan,* 294 Ill. 503, 57.

We conclude that the judgment of the circuit court is supported by the evidence, and no error has been shown therein. The judgment will therefore be affirmed.

*Judgment affirmed.*

Mr. Justice Hershey took no part in the consideration or decision of this case.