JESSICA TUTEIN, Plaintiff

v.

CHARLES DANIELS, Defendant

Civil No. 224-1970

District Court of the Virgin Islands

Div. of St. Croix

November 13, 1973

NICHOLS & SILVERLIGHT, ESQS. (IRWIN J. SILVERLIGHT, of counsel), Christiansted, V.I., *for plaintiff*

FRANK PADILLA, ESQ., Frederiksted, V.I., *for defendant*

YOUNG, *District Judge*

## MEMORANDUM OPINION AND JUDGMENT

In this action to quiet title, plaintiff, Jessica Tutein, seeks, pursuant to 28 V.I.C. § 11, to establish her ownership by adverse possession of Lot No. 1, Green Street, Christiansted, St. Croix. Tutein asserts that in 1951 the then owner of the premises, Mrs. Emmeline Harrigan Daniels (plaintiff's aunt), gave her the property by parol gift. The property at that time was a vacant lot. Defendant, Charles Daniels, the surviving spouse of Emmeline, denies both the fact and validity of the alleged gift. However, there is no dispute that since the early 50's plaintiff has been in exclusive possession of Lot No. 1, Green Street. The character of this possession is, needless to say, critical to the instant inquiry. I will not describe the nature of plaintiff's possession here, but rather will refer to specific facts in the body of this Opinion as they become relevant. To anticipate, however, it is my view that Tutein has proved all of the necessary elements for title by adverse possession. Indeed, plaintiff's actions of ownership present perhaps the classic or paradigmatic case for granting adverse title.

### I. The Statute

Title 28 V.I.C. § 11 provides:

The uninterrupted, exclusive, actual, physical, adverse, continuous, notorious possession of real property under claim or color of title for 15 years or more shall be conclusively presumed to give title thereto. . . .

Such "statutes of repose" are found in well-nigh all jurisdictions and the Virgin Islands version is not untypical. There are not, however, a great number of published Virgin Islands decisions construing our statutory language. See Prince v. Duvergee, 1 V.I. 425 (D.C.V.I. 1938); In re Wright's Estate, 4 V.I. 291, 192 F.Supp. 812 (D.C.V.I. Comm'r 1961). It is necessary therefore to look to the law

of other jurisdictions. Particularly relevant are the early (pre-1921) Alaska cases, on whose statute the Virgin Islands provision is based. A perusal of these musty volumes reveals many decisions on adverse possession; it would seem that the assertion of "squatter's rights" was a common occurrence in the rough-and-ready days of the newly acquired territory. Reference will be made to these interesting opinions as they become relevant in the course of this Memorandum Opinion.

## II. Preliminary Matters

As an initial step, there are certain elements of title by adverse possession on which Tutein has offered proof which I believe are not seriously controverted in the present record. Her possession was uninterrupted; it was exclusive; it was actual; it was physical; it was continuous; it was notorious; and it was all of the above for 15 years and more. I find the above as proven facts by the testimony adduced in the trial of this action. These alone are not enough, however. As Judge Gilbert wrote in Tyee Consol. Min. Co. v. Langstedt, 2 Alaska 640, 121 F. 709 (9th Cir. 1902):

"[T]he possession of the defendant in error was not adverse, and did not amount to disseisin of the plaintiff in error or its grantors. It was actual, open, notorious, and continuous . . . but it . . . was not shown to be hostile."

This is the issue which the parties raise: Was Tutein's possession hostile? In terms of our statute did Tutein occupy the property "under claim or color of title"; was the quality of occupancy "adverse?" I believe that the answer to both of these key questions is "yes."

## III. The Amendment to the Statute

Before dealing with what I consider to be the ultimate legal issue in this case—the hostile character of Tutein's possession—the significance of a 1952 amendment to our

257

adverse possession statute should be discussed. Prior to 1952, the code required a would-be disseisor by adverse possession to establish that the disseisor had possessed the property in question under a claim of right *and* with color of title. The statute was amended in that year, and continues to this day, to require only a claim of right *or* color of title. This small alteration in the statute's wording represents, in my view, a substantial change in the burden placed upon one claiming title by adverse possession.

As a result of this amendment, it is my judgment that it is now unnecessary to establish "color of title" in the Virgin Islands in order to acquire title by adverse possession under the statute. This result is not at all unusual nor should passage of "color of title" as a crucial element of the action be lamented. Indeed "color of title" has never been a necessary ingredient in adverse possession actions in other jurisdictions unless the statute in question specifically makes it one. 43 A.L.R.2d at 12. See Davis v. Biddle, 166 N.E. 301 (Ind. App. 1929) and Trotter v. Neal, 7 S.W. 384 (Ark. 1887). Moreover, the general policy underlying adverse possession statutes—a policy of repose after passage of a certain amount of time, Pillow v. Roberts, 54 U.S. 472, 476 (1851)—would be undercut by requiring a showing of "color of title" in each case. One who had possessed land openly, notoriously, adversely, hostilely, and continuously, under a claim of right, for even fifty years could be ousted by the record owner because the disseisor's possession did not originate with some colorable, albeit void and totally unenforceable, title paper. To make the element of certainty in the claim of ownership of land turn upon such legal niceties would be to ignore the solid justifications for recognizing, after a time, the rights of an adverse possessor.

## IV. The Parol Gift

Because it is unnecessary for Tutein to establish color of title, the testimony and arguments concerning the oral gift of the land in question to Tutein become less important. However, I may dispose of one contention which could render this point decisive. A small number of states hold that a parol donee's possession is permissive and cannot originate adverse possession. See Clarke v. McClure, 51 Va. 305 (1853). Apparently, defendant would have this minority position become that of the Virgin Islands. But from my perusal of the cases, I note that the vast majority of courts which have dealt with the question hold the contrary. E.g., Brevard v. Fortune, 69 S.E.2d 355 (S.C. 1952); Baldwin v. Temple, 35 P. 1008 (Cal. 1894); Duff v. Leary, 16 N.E. 417 (Mass. 1888). I must conclude as well that a parol gift may ripen into title by adverse possession. But it is not the sheer number of precedents which propel me to this conclusion. Rather, it is the inescapably persuasive logic underlying the holdings which proves decisive. If an oral gift is established it can hardly be contended that the donee's subsequent possession and use of the property remains permissive. To the contrary, by virtue of the gift the donee would reasonably consider himself, or herself, to be the rightful owner of the land, to the total exclusion of his or her donor. If such possession is not adverse, it is difficult to see what manner of holding would be.

As I consider the presence or absence of a parol gift of the land inconclusive, it is not essential that I resolve the conflicts in the testimony as to whether the gift actually took place. If it did, my holding here that a parol donee may acquire title by adverse possession would still afford Tutein an opportunity to establish her claim. If it did not take place, the 1952 statutory amendment making "color of title" nonessential would permit Tutein to proceed on the theory of possession under a claim of right. Therefore, it

seems most efficient to proceed to a consideration of what must be the ultimate issue in the case—the hostile character of Tutein's possession.

## V. Hostility

■ The hostility of the disseisor's possession is the key to success in an action for adverse possession. "Color of title," in the end, is really only evidence that the possessor claims the property as his or her own, with hostile regard for the titleholder. The requirement in our statute that possession be under a "claim of right" is actually no more than a restatement of the requirement that possession be hostile to that of the true owner. Therefore, the decisive inquiry is whether Tutein's possession was hostile or whether it was merely permissive and subrogated to defendant's record title.[1]

As a preliminary matter, I note that there is no fixed rule or mechanical formula by means of which the Court can determine if possession is hostile. It would seem that the intention of the disseisor, adequately communicated (either constructively or actually) to the record titleholder, is the crucial element. Marvel v. Barley Mill Road Homes, 104 A.2d 908, 912 (Del. Ch. 1954). Yet, intention, particularly intention of a person over many years, is an elusive thing. The better view is that this hostile intention need not be evidenced by an express declaration. Walter v. Jones, 154 N.E.2d 250, 252 (Ill. 1958). But such a declaration, if it exists, would be of substantial value.

In the ordinary case, it will be necessary to determine the intention of the disseisor on the basis of her actions. The acts required to accomplish adverse possession will, of course, vary depending upon the nature of the property itself and the uses to which it is adaptable. Walter supra, at

---

[1] Defendant Daniels does not have actual record title, but since his former wife, Emmeline Harrigan died without heirs other than defendant, he would be the title record holder.

252–3. A barren tract of land might be reduced to possession, hostile to the ownership of the record titleholder, by merely erecting a fence. Marvel, supra at 912. Walter, supra at 253. Yet, a piece of city land suitable for commercial use might require more definitive acts before one could be said to have hostilely asserted his or her claim of right. For the purposes of this case, it seems sufficient to hold that a hostile claim of right is present when one does such acts on land "as ordinarily only an owner would do, such as construction of buildings and making of improvements, or the payment of taxes." Tiffany, Law of Real Property, 3d ed., § 1148.

■ There are four separate circumstances, which appear in the record, to convince me that in the instant case a hostile claim of right exists. First, and perhaps most significant, is Tutein's construction expenses in improving the lot. Sometime, even before the oral gift was allegedly made in 1950 to Jessica Tutein, Jessica's mother used the old Danish oven in the open yard. After Jessica's mother died in 1950, Jessica used the outdoor oven. Then, sometime between 1950 and 1955, plaintiff Jessica Tutein caused to be constructed on the lot a substantial building worth even then between $10,000 to $12,000. This structure, which was used as a bakery and butchery was enlarged after 1960 at a cost of some $3,000. Today the building is worth, according to Tutein's appraisal, which I find to be reasonable and acceptable, about $22,000. Such acts are telling in any adverse possession case. Noble v. Melchior, 5 Alaska 729, 731–32 (1917). Second, Tutein paid the real property taxes (a fact confirmed by tax receipts and the testimony of Uralta Mulligan, the tax collector) on the Green Street lot throughout the entire period of adverse possession. Defendant alleges that she may have paid the taxes, but that the payments were with defendant's money. However, there being no collaborative proof of the use of such funds,

I accept Tutein's version as the more credible. A substantial and affirmative act such as the payment of taxes is highly consistent with a claim of right to property, even if the taxpayer is profiting from the use of the property and may be paying the taxes out of such profits. Third, Tutein, some six or seven years ago, after renovating the property, rented it out as a butchery and collected the rents. Rental of a property is a kind of act which is most effective to adverse a previous owner under the concepts of our law. Fourth, in the early 60's, Tutein wrote to defendant Daniels and demanded a deed. It is argued by defendant that this negates her claim of right, but I believe to the contrary. To me, it manifests a claim of right. Daniels' failure to comply with Tutein's demand *then* does not negate her disseisin, *now*. I will also add that I believe Tutein offered to and did show defendant Daniels "the property which her aunt (Daniels' deceased wife) gave her." This was in 1964 or 1965 and Daniels did nothing to controvert Tutein's claim of ownership from that time until Tutein brought this action.

In short, Tutein has had that necessary hostility and adversative conduct toward Daniel's title to establish ownership by adverse possession. This result is consonant with those sound policies pellucidly articulated by the United States Supreme Court in its leading adverse possession opinion, Pillow v. Roberts, 54 U.S. 472, 476 (1851):

Statutes of limitation are founded on sound policy. They are statutes of repose, and should not be evaded by a forced construction. The possession which is protected by them must be adverse and hostile to that of the owner. It is not necessary that he who claims their protection should have a good title, or any title but possession.

In conclusion, but last in importance, I find from defendant Daniels' own testimony at the trial, that he admittedly

never took steps to prevent Tutein's exercise of all the attributes of ownership to blossom into full title. Daniels did not limit Tutein's use of the property nor did he attempt to share in the profits by way of demanding rent. Even if he did reside in New York all during the fifteen or more years of the disseisin, he was aware of her activities and use of the property and in no way indicated that it was permissive only.

## JUDGMENT

It is hereby, in conformance with the foregoing Opinion, ORDERED, ADJUDGED and DECREED that plaintiff Jessica Tutein has by adverse possession acquired full, absolute, and exclusive legal title to Lot No. 1, Green Street, Christiansted, St. Croix; and it is further

ORDERED, ADJUDGED and DECREED that defendant Charles Daniels, and any others who may claim title through him, have been ousted by the said disseisor, and have no claim, title, or interest of any kind in the property known as Lot No. 1, Green Street, Christiansted, St. Croix.