**AVERILL BURNETT, Plaintiff**

**v.**

**RITA BENJAMIN, JANE/JOHN DOES ALL PERSONS CLAIMING
RIGHT, TITLE, ESTATE, LIEN OR INTEREST ADVERSE TO
PLAINTIFF'S TITLE TO THE REAL PROPERTY SITUATE
AND DESCRIBED AS PARCELS NOS. 66, 66B and 67
KRONPRINDSENS GADE, et al., Defendants**

Civil No. 348/1995

Territorial Court for the Virgin Islands

Division of St. Thomas and St. John

February 8, 2002

CLAUDETTE V. FERRON, ESQ., St. Thomas, Virgin Islands, *Attorney for Plaintiff*

ELMO A. ADAMS, JR., ESQ., St. Thomas, Virgin Islands, *Attorney for Defendant*

HODGE, *Judge*

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION

This matter came on for trial, the Court sitting without a jury, on September 10 and November 16, 2001. The Court has heard the testimony of the witnesses, examined the documentary evidence introduced by the parties, and considered the arguments and written closing arguments of counsel. Based upon that evidence presented at trial, the Court enters its FINDINGS OF FACT and CONCLUSIONS OF LAW:

1. Plaintiff Averill Burnett entered into a written agreement with Victoria Rene for the purchase of Parcel Nos. 66, 66B, and 67 Kronprindsens Gade, Kronprindsens Quarter, Charlotte Amalie, St. Thomas, Virgin Islands.

2. No record of conveyance, deed, or contract for sale was recorded with the Office of the Recorder of Deeds.

3. The receipts evidencing this written agreement were lost by the Department of Finance, through no fault of the Plaintiff; however, there was sufficient evidence to establish that these documents did indeed exist.

4. Averill Burnett made payments for five years towards the purchase of Parcel No. Remainder 66.

5. Plaintiff paid Victoria Rene $8,300.00 for Parcel Nos. Remainder 66 and 66B Kronprindsens Gade

6. Plaintiff made a down payment of $500.00 towards the purchase of Parcel No. Remainder 67 Kronprindsens Gade.

7. Ms. Victoria Rene died in 1968.

8. Plaintiff redeemed Parcel No. Remainder 66 in 1975 from its public sale for unpaid taxes, as provided by law.

9. In order to redeem Parcel No. Remainder 66, Mrs. Burnett was required to establish her ownership interest in that parcel, to the satisfaction of the Department of Finance.

10. In 1975, after the redemption, Mrs. Burnett had the billing address changed with the Department of Finance so that the property tax bills were thereafter sent to her post office box.

11. From 1975 to the present, Plaintiff has paid all of the real property taxes due and owing on Parcel Nos. Remainder 66, 66B and Remainder 67.

12. Plaintiff, with the assistance of her daughter, received the tax bills at her personal post office box and paid the property taxes by personal check. In sum, Plaintiff paid property taxes in excess of $30,000.00.

13. Plaintiff is widely regarded as the owner of the property within the community. She has been recognized by tenants, government agencies and officials, and neighboring establishments as the sole owner of Parcel Nos. Remainder 66, 66B and Remainder 67 for at least fifteen years prior to the filing of this action.

14. Due to the poor conditions that existed on the property, government agencies and neighbors regularly contacted Plaintiff over a period spanning almost twenty years.

15. Plaintiff personally carried out all business related to the parcels with the relevant government agencies including: the Department of Health, the Department of Public Works, and the Department of Finance.

16. When a fire destroyed the structures on Remainder Parcel No. 66, the government ordered Mrs. Burnett to remove the accumulated debris. Mrs. Burnett complied with this demand, and removed the debris with help from her husband and son. After the rubble was cleared from the property, the Department of Fire Services demolished the remaining structure at Mrs. Burnett's expense.

17. Ms. Valerie Doute, secretary to Bishop Thomas at the neighboring Catholic Diocese, contacted Mrs. Burnett about the squalid conditions on the property because Mrs. Burnett was known within the community, and at the church, as the owner of the property.

18. In 1989, a licensed surveyor, Charles Hamilton & Associates, officially surveyed the properties and Parcels Nos. Remainder 66, 66B and Remainder 67 Kronprindsens Gade are properly described and delineated in the resulting as-built survey.

19. Parcel No. Remainder 67 has been used as rental property since the 1960s.

20. In 1964, Plaintiff accompanied Ms. Rene to visit the properties, and was introduced to Mr. Alfred Beckles, a tenant then residing on Parcel No. 67.

21. Mr. Oraldo Wilson was hired by Plaintiff to collect rent from the tenants on Parcel No. Remainder 67 and to act as her man-of-business with respect to the property.

22. As of January 19, 1998, there were five tenants occupying Parcel No. Remainder 67.

23. Plaintiff collected rents personally and through her agents, particularly Mr. Oraldo Wilson, from tenants occupying Parcel No. Remainder 67 for at least fifteen years.

24. Parcel No. 66B is a very small parcel which is used to access Parcel No. Remainder 67.

25. The Burnett family, their agents, and tenants have used Parcel 66B to access Parcel No. Remainder 67 for at least fifteen years prior to filing this action.

■■■ ■■■■■■■■■ ■■■■■

26. Parcel No. Remainder 66 was badly burned in the early 1980s and now consists of a vacant lot with two concrete slabs. Plaintiff used, and continues to use, Parcel No. Remainder 66 as appropriate to the character of the property.

27. Plaintiff's claim is hostile to the owner of record, Victoria Rene (deceased), her estate and heirs, and all others.

28. Defendants have failed to offer any credible evidence that would defeat Plaintiff's claim, or establish their own interest in the parcels.

29. Plaintiff has established by clear and convincing evidence that her possession of Parcel Nos. Remainder 66, 66B and Remainder 67 has been uninterrupted exclusive, actual, physical, adverse, continuous, and notorious for 25 years and has acted with respect to the property and all others as the owner by: paying taxes, collecting rents, redeeming Parcel No. Remainder 66, maintaining and repairing the property.

## DISCUSSION

Averill Burnett brought this action against numerous defendants to quiet her asserted title to Parcel Nos. Remainder 66, 66B, and Remainder 67 Kronprindsens Gade, Charlotte Amalie, St. Thomas, Virgin Islands by adverse possession.[1] Plaintiff alleges that she has been in "uninterrupted, exclusive, actual, physical adverse, continuous, notorious, and open and hostile possession of the property" under color of a conveyance from the previous owner of the premises, Ms. Victoria Rene, and that she has paid the property taxes on the property for more than fifteen years. (Compl. ¶¶6-10). In addition, Plaintiff contends that she has collected the rental income from the property, maintained the property, and is publicly

---

[1] A title search revealed that Ms. Victoria Rene is the owner of record of the parcels at issue. (P. Ex. 3). In response to an Order from this Court, the plaintiff submitted an affidavit indicating that Ms. Victoria Rene died on March 21, 1968 in St. Thomas, Virgin Islands, that her estate was never probated and that to the best of her knowledge, there are no next of kin to Victoria Rene. Thus, this action was commenced against the fictitious parties "Jane/John Does" and against anyone claiming any right or interest in the property. Notice of this action was published for four weeks in a local newspaper, serving all persons claiming an interest in the parcels by publication. (Decl. of Pub. Dec. 11, 1997). The parcels were individually and clearly identified in the case caption, which was published for four weeks, giving notice to any unidentified person who might have asserted an interest in this property. No such person responded to the public notice, and no such person has become known to the court as of this date.

known as the owner of the property. Therefore, Plaintiff asserts that she is entitled to a decree declaring her to have clear title pursuant to V.I. CODE ANN. tit. 28 § 11.

Rita Benjamin was the only defendant to answer the Complaint. However, Ms. Benjamin died on May 9, 1997 and the Estate of Rita Benjamin has been substituted as a party. Alexis Gerard, daughter of Rita Benjamin and goddaughter of Ms. Rene, represents the estate as special administratrix. (P. Ex. 49; Sugg. of Death, Oct. 21, 1997). Gerard contends that she was promised the property when she cared for Ms. Rene, and that Ms. Rene never discussed the sale of the property with her, or with her father who managed several of Ms. Rene's properties.

■ The issue before the Court is whether the plaintiff has established ownership of Parcel Nos. 66, 66B, and 67 Kronprindsens Gade, Kronprindsens Quarter, Charlotte Amalie, St. Thomas, Virgin Islands by adverse possession. The Virgin Islands Code provides:

> The uninterrupted, exclusive, actual, physical, adverse, continuous, notorious possession of real property under claim or color of title for 15 years or more shall be conclusively presumed to give title thereto, except against the government. V.I. CODE ANN. tit. 28 § 11.

These requirements[2] are designed to alert the record owner of the property to the fact that the possessor is claiming an interest in the property that is contrary to his own. *McNamara v. Christian*, 26 V.I. 109, 111 (Terr. Ct. 1991). If, after the statutory time period, the owner fails to defend his title, the adverse possession can ripen in to ownership.[3]

---

[2] Our statute no longer requires a claimant to show color of title. *Tutein v. Daniels*, 10 V.I. 255, 260 (D.V.I. 1973). The requirement that possession is under a claim of right is merely a restatement that the possession be hostile to the owner of record. *Id.* at 260. The testimony at trial showed that, in 1964 Ms. Victoria Rene agreed to sell the property to Averill Burnett and that payments were made for five years for the purchase of Parcel No. Rem. 66. In addition, a down payment was made towards the purchase of Parcels Nos. 66B and Rem. 67. However, no written agreement was ever recorded nor were any documents available at the time of trial.

[3] *See Pillow v. Roberts*, 54 U.S. 472, 476, 14 L. Ed. 228 (1851) ("Statutes of limitation are founded on sound policy. They are statutes of repose, and should not be evaded by a forced construction. The possession which is protected by them must be adverse and hostile to that of the owner. It is not necessary that he who claims their protection should have good title, or any title but possession.").

■ An adverse possession claimant is required to prove each of the elements of his claim by clear and convincing evidence. The question of whether the plaintiff has met this burden is one for the fact finder. *Decastro v. Stuart*, 43 V.I. 115 (Terr. Ct. 2000) (citing *McNamara v. Christian*, 26 V.I. 109 (Terr. Ct. 1991) and *Griles v. Griles*, 39 V.I. 135 (Terr. Ct. 1998)). In making this determination, the court must look for evidence of "acts on land as ordinarily only an owner would do, such as construction of buildings and making of improvements, or the payment of taxes." *McNamara*, 26 V.I. at 113.

In this case, the circumstances indicate to the Court that Averill Burnett's possession has ripened into ownership. The evidence at trial showed that nineteen years before this action was filed, in 1975, Averill Burnett redeemed the disputed parcels from a pending tax sale. The credible testimony of the plaintiff and her daughter was that, at the time of the redemption, Mrs. Burnett was in possession of a receipt book that indicated that she had been making payments towards the purchase of the property for some period before the redemption. In addition, the evidence clearly showed that Mrs. Burnett has continuously paid all of the property taxes since that time. Further, Mrs. Burnett has collected rent from the tenants on the property, and when the premises were habitable, her tenants were physically present and resided on the property.

Finally, the Court is convinced that Mrs. Burnett is widely known as the owner of the property, not only in the immediate neighborhood and among her tenants, but also publicly among several government agencies who have looked to Mrs. Burnett as the owner of the property. These factors, when combined with the maintenance and upkeep of the property, the physical entries onto the property, the continuous presence of Burnett's agents and tenants on the property, and the collection of rents from the property are sufficient to establish that Mrs. Burnett's possession has ripened over time into ownership.

## A. Open and Notorious Possession

For a claimant to establish that he possessed property adversely to the true owner, that possession must be open and notorious in nature. The claim of ownership must be evidenced by "conduct sufficient to put a man of ordinary intelligence on notice of the fact that the land in question is held by the claimant as his own." *Decastro*, 43 V.I. at 123. To be open and notorious, the possession must be unconcealed and "so

conspicuous that it is generally known by the public or by people in the neighborhood." *Griles*, 39 V.I. at 137.

At trial, the plaintiff offered abundant evidence that she openly behaved like the owner of the property. Plaintiff dealt with the tenants directly and through her agent, Mr. Wilson. She demanded and collected rent from the property. She did business with the relevant government agencies. She posted notices on the property and attempted to oust hold-over tenants and trespassers. She received the tax bills at her personal post office box and paid the property taxes by personal check. Finally, Plaintiff commissioned a survey that lasted several months.[4]

During that time, Hamilton testified that he visited the property regularly, and that the survey was conducted in an open and notorious manner. In addition, it was clearly established that Mrs. Burnett is widely regarded as the owner of the property within the community. In fact, due to the poor conditions that existed on the property, Plaintiff was regularly contacted by government agencies and neighbors over a period spanning almost twenty years.[5] For example, when a fire destroyed the structures on Remainder Parcel No. 66, the government ordered Mrs. Burnett to remove the accumulated debris. Mrs. Burnett complied with this demand, and removed the debris with help from her husband and son. After the rubble was cleared from the property, the Department of Fire Services demolished the remaining structure at Mrs. Burnett's expense. Similarly, Ms. Valerie Doute, secretary to Bishop Thomas at the neighboring Catholic Diocese, testified that she contacted Mrs. Burnett about the squalid conditions on the property because Mrs. Burnett was known within the community as the owner of the property.

The testimony and evidence at trial clearly showed that Mrs. Burnett has openly and notoriously asserted her ownership of Parcel Nos. Rem. 66, 66B and Rem. 67. Based on this evidence, it is clear that Mrs.

---

[4] The land surveyor, Mr. Charles Hamilton, testified on behalf of Plaintiff that the survey was complex, and that it took his firm several months to complete.

[5] *See, for example* Notice from Dept. of Health ordering the removal of weeds and accumulations dated 1980 (P. Ex. 37); Order to Eliminate Fire Hazard of May 15, 1984 (P. Ex 39); Notice from Department of Public Works of August 15, 1989 (P. Ex. 40); Letters from Valerie Doute, secretary to Bishop Thomas, dated October 9, 1996 and November 22, 1996. (P. Ex. 45, 46); Citation from Department of Health of Feb. 10, 1998; (P. Ex. 41); Letter from Department of Health of January 19, 1998 (P. Ex. 41a).

Burnett was widely regarded as the owner of the property. In addition, it is clear that Mrs. Burnett and her agents were involved with the physical operations on the property and that her conduct openly and notoriously evidenced her claim of right. This conduct was more than sufficient to put a man of ordinary intelligence on notice that Mrs. Burnett possessed the property as her own.

## B. Hostile Possession

In addition to being open and notorious, in order to prevail on her claim, the plaintiff must show that her possession was hostile. Hostility means that the possession must be adverse, and not subservient to, the claims of the owner of record and the world. The possession must be under a claim of right and the claimant must possess the property as her own.

The act of paying property taxes has been found "compelling evidence of adverse ownership." *Griles*, 39 V.I. at 138. This is because "paying taxes unequivocally notifies any true owners that another is claiming title to the land." *Id.* While proving the continuous payment of taxes is not necessary to prevail, it is "significant evidence in determining whether possession is in fact under a claim of right." *McNamara*, 26 V.I. at 114.

In this case, the evidence presented at trial, including cancelled checks (P. Ex. 20-33) and tax records authenticated by the Plaintiff's witness, Conchita Benjamin, Officer of the Department of Finance, Tax Assessor's Office, clearly showed that Plaintiff paid taxes in excess of $30,000.00. In addition, she has paid the taxes each and every year since 1975. (P. Ex. 16, 19). Further, Mrs. Burnett redeemed one of the parcels from a pending tax sale.[6] These "substantial and affirmative act[s] ... are highly consistent with a claim of right to property, even if the taxpayer is profiting from the use of such property [by collecting rent] and may be paying taxes out of such profits." *Tutein*, 10 V.I. 225, 262. Taken as a whole, the testimony and documentary evidence clearly show that Mrs. Burnett does not view her possession as subservient to the interests of any other person, including the owner of record. This intent is manifested

---

[6] In 1975, Parcel No. Rem. 66 was sold by for nonpayment of taxes, but Mrs. Burnett was able to redeem the property. Mrs. Burnett testified that she was required to establish her ownership to the satisfaction of the Department of Finance. After the redemption, Mrs. Burnett had the billing address changed, so from 1975 forwards, the property tax bills were sent her post office box. Averill Burnett began paying the property taxes on all three of the disputed parcels since that time.

by the many years during which Mrs. Burnett and her family paid the property taxes on the parcels, collected rent from tenants, maintained the property and exercised dominion and control over the property.

## C. Uninterrupted, exclusive, continuous, actual, physical, possession

For adverse possession to ripen into ownership, the possession must be actual, exclusive, uninterrupted and continuous for more than fifteen years. Actual possession of land, for the purposes of establishing adverse possession, means exercising "dominion" over the land. *Watkins v. Watkins*, 2001 Pa. Super. 128, 775 A.2d 841 (Pa. Super. 2001). It is not equivalent to occupancy but has to do with control. *Id.*

There is no fixed rule for determining whether possession was actual; rather the determination depends in large part upon the character of the premises. *Id.* Similarly, to qualify as exclusive possession, the possession need only be that which would ordinarily characterize an owner's use. *Id.* Finally, to establish continuous use, it is not required that the claimant stay continuously on the land, nor that he perform acts of ownership on a day to day basis. *Id.*

█ In this case the plaintiff did not actually live on any of the three parcels. However, none of the three parcels were fit for habitation. As Marie Louise Barnett testified at trial, it was not the sort of place a woman could go alone. Nonetheless, it is apparent from the record that the Parcel No. 67 Rem. has been treated as rental property since the 1960s.[1] Another of the three parcels, No. 66B, is a very small parcel which is used to access Parcel No. 67. Finally, Parcel No. 66 Rem. was badly burned in the early 1980s and now consists on a vacant lot with two concrete slabs.

It is clear that Mrs. Burnett's tenants have actually lived exclusively and continuously on Parcel 67 Rem. *See Treager v. Friedman*, 79 Cal. App. 2d 151, 179 P.2d 387, 398 (Cal. App. 1 Dist. 1947) (assuming full and exclusive authority in renting and operating apartment houses

---

[1] At trial, Averill Burnett testified that in 1964, she accompanied Ms. Rene to visit the properties, and was introduced to Mr. Alfred Beckles, a tenant residing on Parcel No. 67. Mr. Wilson was hired in the 1980s to collect rent from the tenants. There was abundant documentary evidence establishing the presence of tenants on the property well into the 1990s. As of January 19, 1998 there were still five tenants on the property. (P. Ex. 41a).

179

without regard to owner is use appropriate to the parcel). It is further clear that the Burnett family, their agents and tenants used Parcel 66B to access Parcel 67 Rem. In addition, Mrs. Burnett used Parcel No. 66 Rem. "as was appropriate to the location and character of the property" by clearing the burned building, maintaining the vacant lot, and dealing with the relevant government agencies.[2]

## IV. Conclusion

■ For the reasons set forth above, the Court concludes that Averill Burnett is the owner of Parcel Nos. 66, 66B, and 67 Kronprindsens Gade, Kronprindsens Quarter, Charlotte Amalie, St. Thomas, Virgin Islands. At trial, Plaintiff showed by clear and convincing evidence that she has had uninterrupted, exclusive, actual, physical, adverse, continuous, notorious possession of the property since at least 1975. Benjamin has failed to present sufficient evidence that she has any interest in the property whatsoever. Therefore, pursuant to 28 V.I.C. § 11, the Plaintiff is conclusively presumed to own the property and the Court will enter judgment in her favor.

---

[2] At trial, defense witness Elmo Benjamin testified that he built and operated a parking lot on the premises during the 1980s. However, Plaintiff had the parcels surveyed in 1989-1990. Mr. Hamilton, the land surveyor testified credibly that there was no parking lot on the premises when the survey was done in 1989-1990. This testimony rebutted that offered by defendants. Mrs. Burnett testified that, some time after the survey was completed, concrete was being laid on then-vacant Parcel No. 66 Rem. Upon inquiry, Mrs. Burnett learned that the concrete was being laid to prevent water from flowing onto the road. Having been in contact with the Department of Public Works, and other government agencies, concerning the conditions on the vacant lot, the Court finds that this inquiry was sufficient to retain uninterrupted and exclusive dominion over Parcel No. 66 Rem.