**CAKE BOX BAKERY, INC.,** Plaintiff

**v.**

**AZALIA MADURO, JOHN MADURO, ADA MADURO, THEODORE MADURO, and ELMA MADURO GUMBS,** and all others claiming an interest in Real Property No. 4 Prindsesse Gade, Kronprindsens Quarter, St. Thomas, Virgin Islands, as described herein, Defendants

## Civil No. 231/1977

## Territorial Court of the Virgin Islands

### Div. of St. Thomas and St. John

## August 31, 1978

ALPHONSO A. CHRISTIAN, ESQ., St. Thomas, V.I., *for plaintiff*

JOHN L. MADURO, ESQ., St. Thomas, V.I., *for defendants*

PETERSEN, *Judge*

## MEMORANDUM OPINION

### I

The plaintiff is seeking to quiet title to a disputed area of land of approximately 1,797 square feet in U.S. measurements. The plaintiff contends that such area should be included as part of Property No. 4 Prindsesse Gade, Kronprindsens Quarter, St. Thomas (hereinafter referred to as Property No. 4), and not as parts of Property Nos. 5 and 6 Regjerings Gade, Kronprindsens Quarter, St. Thomas (hereinafter referred to as Property Nos. 5 and 6), as currently appears on the record in the Recorder of Deeds Office.

The plaintiff is the title record owner in fee of Property No. 4, as recorded in the Recorder's Office for the District of St. Thomas and St. John,[1] which was conveyed by quitclaim deed to the plaintiff on October 6, 1976, by Alfred Lockhart, Grantor, of Estate Thomas, St. Thomas. This

---

[1] See Book 17-M, Page 101, Sub. No. 2803 and entered in the Real Property Register for Kronprindsens Quarter No. 1, Page 175, dated October 21, 1977.

property had been owned by the Lockhart family from November 12, 1898, until the date of its conveyance.[2]

The defendants are title record owners in fee of Property Nos. 5 and 6 Prindsesse Gade. These properties were conveyed by warranty deed to the defendants' father, Mr. Joseph Lawrence Maduro, by minors Alfred, Jr., Dorothy, Raymond and Osee Lockhart on August 21, 1946.[3] Joseph L. Maduro died testate in Charlotte Amalie, St. Thomas, on April 19, 1971, and the present defendants are the devisees of the estate.[4]

The uncontroverted testimony of the parties established that at the time of the sale and conveyance of Property Nos. 5 and 6 to Joseph L. Maduro, the Lockharts owned "long row" houses along Regjerings Gade which ran the entire length of Property No. 4. In addition, the Lockharts owned an old cistern and an outside privy which were partially located on all three properties. The Lockharts also erected and maintained a fence which was situated on Property Nos. 5 and 6. This fence runs parallel to the northern border of Property No. 4. After the sale to the Maduros, the Lockharts continued to occupy, operate and maintain the fenced-in area, and continued to collect rental from the houses. When the row houses were no longer inhabitable, the Lockharts demolished them in 1961. The fence on Property Nos. 5 and 6 also reached a dilapidated

---

[2] Attached to the quitclaim deed was a Measure Brief dated October 6, 1976, which described the area so conveyed as amounting to 1,182 square feet in Danish measurement as per the survey of August 1, 1825. There was no reference in said deed as to a conveyance of any part of Property Nos. 5 and 6.

[3] See deed of conveyance from the Lockhart et al. to Joseph L. Maduro, recorded September 9, 1946. Also attached to the deed was a description of such premises in the form of a Measure Brief, dated September 3, 1946, which described the area so conveyed in Property No. 5 as amounting to 2,208 square feet in Danish measurement as per the survey of August 1, 1825; and the area so conveyed in Property No. 6, as amounting to 2,208 square feet in Danish measurement as per the survey of August 1, 1825.

[4] See Probate No. 15-1973 (District Court of the Virgin Islands, Division of St. Thomas and St. John).

condition and although the testimony of the parties and witnesses at trial did not establish when it was taken down, or by whom, the testimony was clear that the fence was restored by the defendants on the same location several years ago. In the interim the old cistern was covered and filled with dirt.

The credible testimony indicated that prior to the sale on October 6, 1976, and the survey made by Mr. Baptiste on August 18, 1976, the plaintiff inspected the property up to the fence and was informed she would be sold all the fenced-in property. Mr. Lockhart's testimony further revealed that the Lockharts had always maintained ownership of the fenced-in property and that it was the fenced-in area that the plaintiff was interested in buying. Mr. Baptiste, the surveyor, indicated that he was always under the impression that the fenced-in property belonged to the Lockharts. He also testified that it was only after the survey and his research that he realized that the fence, which had been standing since 1938, had encroached upon the land of the defendants, the record titleholders. Later, when the plaintiff purchased Property No. 4, she held possession up to the fenced-in portion.

At no time during the occupancy and possession of the fenced-in portion by the plaintiff's predecessors-in-title, the Lockharts, did the Maduros seek to eject them or maintain an action in trespass against them. Moreover, the evidence clearly established that both parties were under the mistaken belief that the Lockharts owned up to the fenced-in portion.

The plaintiff argues that its predecessors-in-title, the Lockharts, satisfied the necessary statutory requirements and that privity existed which would allow for the tacking together of different and consecutive periods of adverse possession.

The defendants assert that the subsequent use of the

property by the Lockharts was substantially the same prior, during and after the conveyance. The defendants further contend that although the Lockharts had remained in possession and had continued occupancy since their warranty deed to the Maduros, there is a presumption that the Lockharts did so in recognition of the Maduros' right and in subordination to the title conveyed and not in hostility thereto.

Section 11 of Title 28 of the Virgin Islands Code provides as follows:

§ 11. *Adverse possession*

The uninterrupted, exclusive, actual, physical, adverse, continuous, notorious possession of real property under claim or color of title for 15 years of more shall be conclusively presumed to give title thereto, except as against the Government.

The uncontroverted testimony of the parties established that the possession of the Lockharts had been uninterrupted, exclusive, actual, physical, continuous and notorious for over 31 years. Without a finding by this court that the possession by the plaintiff and its predecessors-in-title was adverse to the record titleholder, and under claim or color of title, the plaintiff would not be able to prevail on the merits.

II

This court must first address the issue of whether the Lockharts who conveyed Property Nos. 5 and 6 by warranty deed can hold adversely to the Maduros.

There is no fixed rule whereby the actual possession of real property by an adverse claimant may be determined in all cases. See Tutein v. Daniels, 10 V.I. 225 (D.V.I. 1973). Not only must his possession be without subserviency to, or recognition of, the title of the true owner, but it must be hostile to the whole world. It has been declared that the disseisor "must unfurl his flag on the land, and

keep it flying, so that the owner may see, if he will, that an enemy has invaded his domains, and planted the standard of conquest." He must intend to hold the land for himself, and that intention must be made manifest by his acts. It is the intention that guides the entry and fixes its character. Marvel v. Barley Mill Road Homes, 104 A.2d 908 (1954). No particular act or series of acts is necessary to demonstrate an intention to claim ownership. The owner is, of course, chargeable with knowledge of what is openly done on his land and therefore calculated to attract attention. See Robin v. Brown, 162 A. 161 (1932); Reed v. Short, 57 A.2d 90 (1946).

The uncontroverted testimony of the plaintiff's witnesses established that whenever debris and waste had to be removed from the area in dispute, Mr. Lockhart notified the Department of Health and the Department of Public Works. Further, that whenever the grass grew too long, "Sanitation" informed the Lockharts and not the Maduros. Moreover, the Lockharts collected and retained all rents until the row houses were removed. It is not disputed that the community considered the land in question as belonging to the Lockharts.

The defendants questioned the good faith of the plaintiff's predecessor-in-title by asserting that the Lockharts never sought to quiet title by adverse possession during their thirty-one years of possession. However, the Lockharts never saw a need for legal redress in that:

the family never assumed that they were using any part of the [Maduro] property according to what they turned back over when it was turned over from [the] grandfather on down . . . (Lockhart's testimony).[5]

The defendants also contended that the plaintiff's claim should be denied because neither plaintiff nor plain-

---

[5] See also Norwood v. Busher, 349 P.2d 490, 80 A.L.R.2d 1161 (1960) wherein court held that an intent to claim land actually occupied under a mistaken benefit of ownership is sufficient to establish the requisite hostile intent.

tiff's predecessors-in-title paid the real property taxes after the conveyance to Mr. Joseph L. Maduro. In most jurisdictions, payment of taxes is not a condition to acquisition of title by adverse possession unless made so by statute. Finn v. Alexander, 171 P. 602 (1918); Stark v. Stanhope, 480 P.2d 72, 78 (1971). This is also applicable in the Virgin Islands where the statute on its face does not require payment of taxes. Although whenever real property taxes have been paid by the party claiming adverse possession, such payment strengthens the claimant's position. See Tutein v. Daniel, supra.

■■ The defendants have correctly cited the general rule that where a grantor remains in possession of a portion of the premises conveyed he is presumed to hold in subordination to the title conveyed. However, this presumption is rebuttable and under proper circumstances a grantor may by adverse possession acquire title to land which he has conveyed. In a line of cases discussed at Annot., 39 A.L.R.2d 353, 364 (1955), an exception to the general rule is discussed. This exception applies in those cases in which the grantor gives up possession of the major part of the property conveyed but remains in possession of a portion of it under the mistaken belief that it was not conveyed. Under such facts there is no validity to the assumption, upon which the general rule is based, that the grantor remains in possession permissively under the grantee. See also Peters v. Juneau-Douglas Girl Scout Council, 519 P.2d 826 (1974); Moir v. Bailey, 225 S.W. 618 (1920); Stockwell v. Gibbons, 363 P.2d 111 (1961).

And in Rider v. Pottratz, 425 P.2d 766 (1967), the court held that the presumption that a grantor remaining in possession after conveyance would be presumed to hold adversely to his grantee has no basis in fact where grantor's possession is continued under the mistaken belief that the area in question was not included in the grant, so that

when a person claiming title by adverse possession is the grantor, the notice of intention to hold hostilely is not required to be express and explicit.

This court finds by a preponderance of the evidence that the Lockharts never intended to hold possession of the disputed area subservient to the Maduros and that the Lockharts did hold the area adversely and under a claim of title for over 31 years.

Because the plaintiff was in possession for less than 15 years, it was necessary for her to tack her adverse possession to that of her predecessors-in-title to satisfy the applicable statutory period. The question arises whether this was proper because the parcel adversely possessed was not within the description of the deed to the plaintiff.

■■ The rule is that successive adverse possessions of property omitted from a deed description, especially contiguous property, may be tacked if it appears that the adverse possessor intended to and actually turned over possession of the undescribed part with the portion of the land included in the deed. Bellotti v. Bickhardt, 127 N.E. 239; Adverse Possession Tacking, Annot., 17 A.L.R.2d 1128, 1131–1132 (1951). Because the possessory title is entirely an incident to the adverse holder's possession, transfer of that possession, even by parol, effects a transfer of the possessory interest. Brand v. Prince, 324 N.E.2d 314 (1974). The circumstances of this case are entirely consistent with a finding that plaintiff's predecessors, the Lockharts, intended to and actually turned over their possessory interest in the fenced-in portion.

The defendants' contention that the plaintiff cannot tack to her adverse usage the adverse usage of her predecessors-in-title must fail.

■ The defendants have directed the court's attention to the principle that title to land gained by adverse possession must be included in the deed of conveyance in

order for it to effectively pass to the grantee. However, this rule has been limited to those cases where the deed is relied on solely to create privity and there are no circumstances showing an intent to transfer the possession of any property beyond that called for in the deed. In Carpenter v. Huffman, 314 So.2d 65 (1975), the court stated:

We agree that ordinarily title to land gained by adverse possession must be included in the deed of conveyance in order for it to effectively pass to the grantee. But where, as here, the predecessors [in title] had not gained title to the disputed strip at the time of their conveyance to her [the plaintiff] but had possessed it adversely *the failure to include in the deed the description of the disputed strip would not of itself disallow tacking.* (Emphasis added.) 314 So.2d at 685.

It further noted:

... Thus, where a person having title by deed to a lot or tract of land described in the deed also has enclosed with it and is in possession of adjoining land to which he has no record title, and conveys the land by the description in the deed and delivers with it possession of the entire enclosure, the continuity of possession will not be broken, and the two possessions may be joined and considered as one continuous possession. So, where [a grantor] of land encloses and occupies a tract outside his boundaries, believing it to be included therein, and in that belief conveys to another by the same description, intending that the grantee shall take the whole enclosed area, his possession may be tacked to that of his grantee.

Thus Carpenter stands for the applicable proposition that when the grantee is put into actual possession of the disputed land adversely held by his immediate grantor, sufficient privity is established to allow tacking. See also Withers v. Burton, 106 So.2d 876 (1958); Motley v. Crumpton, 93 So.2d 413 (1957); Spires v. Nix, 57 So.2d 89 (1952). Accordingly, the Lockharts' failure to include in their deed to the plaintiff the description of the disputed area will not disallow tacking by the plaintiff. See also Graham v. Hawkins, 314 So. 74 (1967). And in Fred v. Colverlead

Citizens Ass'n, Inc., 228 A.2d 421 (Md. 1967), the court stated:

A [l]andowner in *possession of property in dispute* would be entitled to tack his adverse possession to possession of his predecessors in title where it appeared that predecessors in title possessed the *disputed area adversely* and turned over to their grantees possession of the lots *together with the disputed area.* (Emphasis added.)

■ In the instant case there was a parol understanding between Lockhart, the predecessor-in-title, and the present plaintiff that the property conveyed included the disputed area. Lockhart was under the impression that he was conveying to the plaintiff the fenced-in property and the plaintiff was under the impression that by virtue of the deed she had obtained title to that property. Thus, she took possession of the disputed property. That in itself is sufficient to create a privity between the parties. See Annot., 46 A.L.R. 797, n.4 (1927), and cases cited therein.

A decree shall issue from this court in keeping with the foregoing opinion.

### JUDGMENT

The court having jurisdiction over the subject matter and parties to this proceeding, and having submitted Findings of Fact and Conclusions of Law in the form of a Memorandum Opinion issued this date in the above-captioned matter; now, therefore, it is

ORDERED, ADJUDGED, AND DECREED that plaintiff herein, Cake Box Bakery, Inc., has by adverse possession acquired and shall now hold full, absolute, and exclusive title to an area of land of approximately 1,797 square feet in U.S. measurements, the boundaries of which are defined as:

On the north, beginning at Boundary Post No. 805, a true, direct line approximately 50.2 feet in length running south seventy-eight degrees fifty-nine minutes east (S. 78° 59' E.) co-terminous

with an existing fenceline; then running due south, a true, direct line approximately 35.22 feet in length running fourteen degrees one minute west (S. 14° 01′ W.) co-terminous with the western boundary line of General Gade; then running due west, a true, direct line approximately 50.26 feet in length running south eighty degrees zero minutes east (S. 80° 00′ E.), co-terminous with the present northern boundary of Property No. 4 Prindsesse Gade; then running due north, a true, direct line intersecting with Boundary Post No. 805, approximately 36.8 feet in length running north thirteen degrees forty-three minutes east (N. 13° 43′ E.) co-terminous with the easternmost boundary line of Property Nos. 5 and 5-A Prindsesse Gade;

and it is further

ORDERED, ADJUDGED AND DECREED that the defendants Azalia Maduro, John Maduro, Ada Maduro, Theodore Maduro, and Elma Maduro Gumbs, and any and all others claiming an interest in the area hereinabove described, have been ousted by plaintiff herein, and have no claim, or title, or interest of any kind in the area hereinabove described; and it is further

ORDERED, ADJUDGED AND DECREED that each party shall bear its own costs, expenses and attorney's fees in this proceeding.

Div. of St. Thomas and St. John

