### ANTON OLIVER EMANUEL, Plaintiff

v.

### A SECTION OF PARCEL 119 and 121 ESTATE SMITH BAY, and CHRISTIAN PETER FRANCIS, LUCIA LOUISE (FRANCIS) MULRAINE, and ANY PERSON CLAIMING AN INTEREST IN PARCEL 119 OR PARCEL 121, ESTATE SMITH BAY, Defendants

Civil No. 1982-31

District Court of the Virgin Islands

Div. of St. Thomas and St. John

August 20, 1984

MARIA TANKENSON HODGE, ESQ., St. Thomas, V.I., *for plaintiff*

HAROLD MONOSON, ESQ., St. Thomas, V.I., *for defendants Peter Francis and Lucia Louise Mulraine*

JOHN L. MADURO, ESQ., St. Thomas, V.I., *for defendants Emile and Robert Francis*

CHRISTIAN, *Chief Judge*

## MEMORANDUM

Plaintiff Anton Oliver Emanuel has brought this action pursuant to Title 28 V.I.C., Section 11 claiming title to portions of Parcels 119 and 121 of Estate Smith Bay. Section 11 on which plaintiff's claim is based reads as follows:

> The uninterrupted, exclusive, actual, physical, adverse, continuous, notorious possession of real property under claim or color of title for 15 years or more shall be conclusively presumed to give title thereto, except as against the Government.

Named as defendants are the two subject parcels of land and Robert and Emile Francis, owners of record of Parcel No. 121, and Peter Francis and Lucia Mulraine, owners of record of Parcel No. 119. After trial, held on July 19, 1984, the Court finds and concludes that plaintiff is entitled to the relief he seeks.

Since sometime prior to the year 1942 when this plaintiff was 16 years of age, his father who is the owner of record according to recent surveys of a parcel adjoining Parcels 119 and 121, was utilizing the particular portions of land which are the subject of this dispute. Plaintiff's father, with plaintiff's assistance, planted provisions on the land, grazed his animals on the land and in connection with the farming activities had built terraces on the land, the better to facilitate the provisions he was planting. Plaintiff, together with his father, planted fruit trees on the land some of which remain, together with the terraces, to this very day.

In 1942, plaintiff and his father erected a fence enclosing the disputed piece of property, at least on three sides. Upon the death of plaintiff's father in 1954, plaintiff continued to maintain the fencing and to plant provisions on the property as well as to graze animals. All during that time plaintiff and his father occupied and used the premises under claim or color of ownership.

Continuing to occupy the subject premises plaintiff on or about January 16, 1966, had one Floyd George, a land surveyor, survey the premises which was enclosed by his fences. This survey shows the old fence lines mentioned above. The following year, plaintiff contemplated constructing a building on the subject premises and for this purpose commenced to store building materials on the premises. However, not only did plaintiff store construction material on the premises, but he hired a bulldozer to cut a road to the proposed construction site and went so far as to have the excavation for the foundation of this building done. All this took place in 1967.

Significantly, Etienne Francis, now deceased, the father of Peter Francis and Lucia Mulraine, was present when the bulldozer cut the road and dug the foundation. Mr. Etienne Francis, it appears, never considered the plaintiff to be encroaching on his land, for he never made the slightest protest but rather seemed to have witnessed the doing of the work with tacit approval.

The road which was cut by the bulldozer at the instance of plaintiff, commences at a point where a common right of way adjoins one of the boundaries of land which plaintiff had inherited from his father. The roadway ran through this inherited parcel of land, undisputedly plaintiff's, and from there across the subject premises

up to the proposed construction site. At the point at which the road entered plaintiff's inherited land, he erected a gate and posted a no trespassing sign, forbidding the world to enter upon the roadway, further evidencing plaintiff's claim to all the land traversed by the new road.

For some reason not fully explained at trial, plaintiff subsequently abandoned the idea of erecting the structure on the premises. He left the construction material where he had stored it, some of it deteriorated over the years, portions of it was apparently stolen and what remains of it is still on the premises.

In all the years up to the early or middle 70's, plaintiff's possession of the premises fulfilled the statutory requirements in every respect. Then sometime at about the middle 70's plaintiff became ill. While on his sick bed, a friend reported to him that a surveyor had been seen on plaintiff's land, that is the premises here in dispute. Plaintiff was advised that the name of the surveyor was one Charles Hamilton. Upon plaintiff's recovery, he lost no time in going to the office of the surveyor to inquire of him by what right he had been trespassing (surveying) on plaintiff's land. Plaintiff was then advised that the survey was being conducted at the request of the Francis brothers. Thereupon, plaintiff went to defendants Emile and Robert Francis and explained to them that the property belonged to him. This conversation took place sometime in 1977. It is worthy of note that at no time prior to plaintiff's conversation with the Francis brothers had they ever laid claim to the land which he occupied as his own. In August of 1981, plaintiff engaged a surveyor to strike a line between the two ends of the fencing, and to record the said survey. It is significant that at about the same time plaintiff happened to notice some marijuana plants growing on a portion of the subject premises and he at once brought it to the attention of the police, and had officers of the Narcotics Strike Force remove the same from "his land."

As pointed out above, plaintiff laid claim to the land in a face to face conversation with two of the defendants in 1977. Whatever their beliefs it is clear that they did nothing to challenge plaintiff's continued occupancy and use of the premises. Moreover, it is worthy of note that it is Anton Emanuel who is the plaintiff in this action. It is he who is so firmly convinced of his right and title to the premises that he instituted this action.

It is on all the foregoing that this Court concludes that the possession of this plaintiff of the premises, including that of his

father, since prior to 1942 has been "uninterrupted, exclusive, actual, physical, adverse, continuous, notorious," and well in excess of 15 years. The conclusion is, therefore, inescapable that plaintiff is the owner of the parcel of land shown on Exhibit 3 and described as "Parcel of Smith Bay" the area of which is 48,500 feet, which is approximately 1.11 United States acres.

The foregoing conclusion would hold even if one were to say that plaintiff's adverse possession of the premises commenced upon the death of his father in 1954. In our view, however, this plaintiff is entitled to lay claim to the period of time during which the premises were occupied by his father. There is also some contention that during the last three or four years plaintiff has made little or no use of the premises, a matter which plaintiff denies, for he testified that he makes use of the premises up to the present time. Whether he does or does not is immaterial, however, for once title has vested in a person by adverse possession their limited or nonuse of the premises thereafter would not divest them of title. See Burkhardt v. Smith, 115 N.W.2d 540 (Wis. 1962); Amey v. Hall, 181 A.2d 69 (S. Ct. Ver., 1962); Butler v. Hanson, 455 S.W.2d 942 (Tx. 1970); Brand v. Prince, 324 N.E.2d 314 (Ct. App. N.Y. 1974); Shores v. Lindsey, 591 P.2d 895 (Wyo. 1979); Darling v. Ennis, 415 A.2d 228 (Vt. 1980); Wiedeman v. James E. Simon Co., Inc., 307 N.W.2d 105 (Neb. 1981). Let judgment be entered for the plaintiff in accordance with the foregoing.