**JAMES McNAMARA, Plaintiff**

**v.**

**ELVINA CHRISTIAN, GERTRUDE HOLMES and all other persons claiming by, by under or through them, and LAWRENCE HENDRICKS, Defendants**

Civil No. 750/1989

Territorial Court of the Virgin Islands

Div. of St. Croix at Kingshill

May 23, 1991

FRANK PADILLA, J.D., St. Croix, V.I., *for plaintiff*

LISA HARRIS–MOORHEAD, ESQ. (HODGE & SHEEN P.C.), Christiansted, St. Croix, V.I., *for defendants*

CABRET, *Judge*

## MEMORANDUM OPINION AND ORDER

This is an action to quiet title to Plot No. 4 of Parcel 12 of Estate Richmond, Company Quarter, St. Croix (hereafter referred to as "Plot 4" or "the property"). The Plaintiff claims that he acquired title to Plot 4 by adverse possession. Because the Court finds that Plaintiff's possession of Plot 4 was not exclusive, open, notorious, and hostile to the title of the record owners, judgment will be entered for the Defendants against the Plaintiff.

## I. FACTS

The Plaintiff, James McNamara, testified that he moved, with his parents, to Plot 5 of Estate Richmond in 1969. Plot 5 is located immediately to the south of Plot 4. There were two wooden houses on Plot 4 at the time. Soon after the Plaintiff's arrival, the occupants of the dwelling structures on Plot 4 vacated the premises. According to Plaintiff, the structures were left vacant and abandoned and eventually began to deteriorate. Sometime in 1972, the Plaintiff's family decided to take over the property. They razed the dwelling structures and constructed a rudimentary fence around the southern and eastern boundaries of the property out of the debris.

In 1977, Plaintiff's mother, Mrs. McNamara, gave him exclusive possession and responsibility for maintaining the property. He erected a tool shed and dog house on the property. He further testified that on many occasions he prohibited various people from picking coconuts from a tree on Plot 4, as well as from using the property as a throughway. He even constructed a "no trespassing" sign which he posted on the coconut tree. In 1989, Plaintiff erected a chain link fence around the property and placed a container trailer upon it.

Margaret Carter, a relative and the legal guardian of the Defendants, Elvina Christian and Gertrude Holmes, testified that she had been handling the affairs of the Defendants for some 15 years, and had specifically been handling their affairs as it related to Plot 4 from as early as 1980. According to Ms. Carter there existed up until 1989 a makeshift fence around the property that was often trampled and in disrepair. She testified that the general public used Plot 4 as a garbage dump and that throughout the eighties she often hired an individual to go upon Plot 4 in order to clear the land of grass and other debris, and also to repair the makeshift fence. In 1989 she noticed a trailer on the property, but rather than remove the trailer, she elected to have her legal counsel draft a letter demanding rental payments. Ms. Carter also testified that on several occasions she called the Plaintiff's home regarding the trailer, but the Plaintiff never returned any of her calls. Subsequently, the Plaintiff filed this action claiming that he acquired title to Plot 4 by adverse possession.

## II. DISCUSSION

■ The Virgin Islands adverse possession statute states as follows:

> The uninterrupted, exclusive, actual, physical, adverse, continuous, notorious possession of real property under claim or color of title for 15 years or more shall be conclusively presumed to give title thereto, except as against the Government.

28 V.I.C. sec. 11. Simply put, the purpose of the requirements that the adverse claimant's use of the property be uninterrupted, exclusive, actual, physical, adverse, continuous and notorious is to give the record owner notice that someone else is claiming title to the property. Open and notorious possession contemplates possession that is unconcealed and so conspicuous that it is generally known by the public or by people in the neighborhood. 39 Am. Jur. Proof of Facts "Adverse Possession" § 8, 289 (1984). The owner is, of course, charge-

able with knowledge of what is openly done on his land and therefore calculated to attract attention. Cake Box Bakery, Inc. v. Maduro, 15 V.I. 283, 289 (Terr. Ct. 1978).

 The statutory requirement that possession be under a "claim of right" simply means that the claimant's possession must be hostile to that of the true owner. Mere possession of the true owner's land will be presumed to be with the owner's permission and in subordination to his title and thus not hostile to it. 39 Am. Jur. Proof of Facts, supra, § 7, 285 (1984). There is no fixed rule or mechanical formula whereby the Court may determine if possession is hostile, or whereby the actual possession of real property by an adverse claimant may be determined. See Tutein v. Daniels, 10 V.I. 255 (Terr. Ct. 1973); Cake Box Bakery. Inc. v. Maduro, supra. It is the intention of the adverse claimant upon entering the property that fixes the character of his possession. Id. at 289. Therefore, whether or not possession by an adverse claimant is exclusive, open, notorious, and hostile to the rights of the true owner of the property is a question for the trier of fact. See 2A C.J.S. "Adverse Possession" sec. 301, 83 (1972). Furthermore, the burden is upon the adverse claimant to prove all the elements of his claim by clear and convincing evidence. 39 Am. Jur. Proof of Facts, supra, § 11.

A. *Plaintiff Has Not Carried His Burden*

The Plaintiff has not proved by clear and convincing evidence that his possession of Plot 4 was open, notorious, exclusive, and hostile, so as to give the Defendants notice of the adverse nature of his possession. Arguably, the character of the land in question may have a significant effect on the acts sufficient to constitute adverse possession. For example, in Tutein v. Daniels, supra, at 260–61, the court reasoned as follows:

> In the ordinary case, it will be necessary to determine the intention of the disseisor on the basis of her actions. The acts required to accomplish adverse possession will, of course, vary depending upon the nature of the property itself and the uses to which it is adaptable . . . A barren tract of land might be reduced to possession, hostile to the ownership of the record titleholder, by merely erecting a fence . . . Yet, a piece of city land suitable for commercial use might require more definitive acts before one could be said to have hostilely asserted his or her claim of right. For the purposes of this case, it seems sufficient to hold that a

hostile claim of right is present when one does such acts on land "as ordinarily only an owner would do, such as construction of buildings and making of improvements, or the payment of taxes" . . .

(Citations omitted).

Thus, it is entirely possible that the mere fencing of property in some rural areas may be enough of an open and notorious and hostile act for purposes of the adverse possession statute, whereas significantly more may be required in order to adversely possess land in highly populated urban or industrial areas. In Tutein, for instance, the plaintiff, under the test articulated above, was found to have adversely possessed a vacant plot of land in Christiansted, St. Croix, where she constructed a substantial building that was used as a bakery and butcher shop, paid the real property taxes throughout the entire period of adverse possession, and collected rents from the property. In yet another case, Emanuel v. Francis, 21 V.I. 92 (1984), the plaintiff was found to have adversely possessed a vacant plot of land in Estate Smith Bay, St. Thomas, where he and his father before him had constructed a fence around the property, planted provisions on the land, grazed animals on the land, built terraces in connection with the farming activities, and even bulldozed a road through the land.

Unlike Emanuel, in the instant case the undeveloped land is located in a developed town area. The Plaintiff himself testified that the property was given to him by a parol gift from his mother in 1977. Thereafter, he constructed a tool shed and dog house on the property, and posted a "no trespassing" sign. He cleared the land regularly, as often as twice a month, and regularly kept the public from going onto the property. Thus, it has been established that until 1989, when he put up the chain link fence, neither the Plaintiff nor his family had ever put up any type of substantial permanent structure or made any significant improvement to the property, nor had they used the property for anything other than to keep their dog, or to build a tool shed. Plaintiff does argue that on many occasions he kept people from going onto the property, however this representation was directly contradicted by Ms. Carter, who testified that the public used the property as a trash dump, and that she often hired an individual to clean the property and to repair the makeshift fence that was usually trampled and in disrepair.

Clearly, the evidence on the issue of exclusive, open, notorious and hostile possession is both scarce and conflicting. Yet, as previ-

ously noted, Plaintiff had to prove, by clear and convincing evidence, that his possession of Plot 4 was exclusive, open, continuous, notorious, and hostile for 15 years. Plaintiff has failed to carry his burden. The Court is not clearly convinced that his possession of Plot 4 was exclusive, open, notorious, and hostile to the rights of the Defendants.

B. *Plaintiff Cannot Tack*

■ Even if the Court were to accept that Plaintiff's acts of possession were sufficiently open, notorious, exclusive, and hostile so as to give notice to the Defendants, it is clear that Plaintiff has not possessed the land for 15 years. What Plaintiff seeks to do is to add his period of possession of the property to the period from 1972 to 1977 when, he alleges, his parents first took over the property. There is no doubt that tacking is permissible where there has been a parol gift of real property between family members. See Annot., "Adverse Possession Under Parol Gift of Land" 43 A.L.R. 2d 6, sec. 11(b) (1955); Emanuel v. Francis, 21 V.I. 92 (1984). But, in this case, the nature of the property's possession by Plaintiff's parents must be examined. Here, the evidence is insufficient to establish that Plaintiff's parents were in fact hostile possessors of the property. Only two acts of ownership were allegedly done by Plaintiff's parents: the tearing down of two old and decaying wooden structures and erection of a rudimentary fence out of the debris. Beyond that, they did nothing more.

■ Additionally, it is uncontroverted that neither the Plaintiff nor his parents ever paid any taxes on Plot 4. Although the payment of taxes is not a necessary prerequisite to prevailing on a claim for adverse possession, it is significant evidence in determining whether possession is in fact under a claim of right. See Cake Box Bakery, Inc. v. Maduro, 15 V.I. 283 (1978). In this case, the failure of Plaintiff's parents to pay any taxes on the property is significant because they also failed to perform any affirmative acts of ownership besides constructing a makeshift fence out of the debris from two decaying structures.

Most significant, however, is the uncontroverted testimony of Ms. Carter that in 1982, the plaintiff's mother, Mrs. McNamara, offered to purchase Plot 4 from the Defendants. In fact, Ms. Carter testified, without contradiction, that the contract for sale was drawn up and would have been signed had the Defendants not changed their minds about the sale. Clearly, Mrs. McNamara's offer to purchase the property from the Defendants five years after she had allegedly given the

114

property to her son by parol gift is inconsistent with any claim of right to the property. By offering to purchase the property, Mrs. McNamara clearly recognized that superior title to Plot 4 was in the Defendants. See 2 C.J.S., supra, § 186. This is strong evidence indeed that she never intended to enter the property in 1972 under a claim of right.

■ It is also significant to note that during the time that negotiations were being made to purchase the property, neither Mrs. McNamara nor the Plaintiff asserted to the Defendants that they claimed any interest in the property whatsoever. In fact, the Defendants first learned that the Plaintiff was claiming title to Plot 4 in 1989 when Plaintiff placed a container trailer on the property and enclosed the land with a chain link fence. Therefore, under the circumstances, the Court finds that Mrs. McNamara did not enter the property in 1972 under any claim of right and that at least up until 1977 her possession of the land was not open, notorious, and hostile. Consequently, the Plaintiff may not tack the period from 1972 through 1977 when he alleges his parents held the property. That being the case, Plaintiff himself has not adversely possessed the property for 15 years.

## CONCLUSION

For the reasons discussed it is clear that Plaintiff has failed to carry his burden of proving all the elements of his claim for adverse possession. Furthermore, the Plaintiff may not tack the period that his parents allegedly possessed Plot 4 since their possession was not shown to be open, notorious, and hostile to the title of the Defendants.

## JUDGMENT

IN ACCORDANCE with the Memorandum Opinion issued on this date, it is hereby

ORDERED, ADJUDGED AND DECREED that Plaintiff has no interest in Plot 4 of Parcel 12 of Estate Richmond, Company Quarter, St. Croix, and it is

FURTHER ORDERED, ADJUDGED AND DECREED the Defendants are the rightful owners of Plot 4 of Parcel 12 of Estate Richmond, and hold full, absolute and exclusive title to the said property.

DONE AND SO ORDERED this 23rd day of May, 1991.