**ISIDORE GRILES, Plaintiff**

**vs.**

**HENRY C. GRILES, et al., Defendants**

Civ. No. 707/1992

Territorial Court of the Virgin Islands

Div. of St. Croix at Kingshill

September 29, 1998

FRANK PADILLA, ESQ., St. Croix, U.S.V.I., (Law Offices of Frank Padilla, J.D.), *for Plaintiff*

ALLAN A. CHRISTIAN, ESQ., St. Croix, U.S.V.I., (Law Offices of Allan A. Christian) *Pro Se*

CABRET, *Judge*

### MEMORANDUM OPINION

Isidore Griles sued numerous defendants, including Allan A. Christian, to quiet his alleged title by adverse possession in a parcel of real property located at 29 Strand Street, Frederiksted, St. Croix ("the property"). Christian was the only defendant who answered Griles' complaint, and in his response Christian denied

that Griles owned the property. Christian also counterclaimed to quiet his own alleged title to the property. The matter came before the Court for trial without a jury on February 13, 1996. For the following reasons, the Court finds in favor of Griles both on his claim to quiet title and on Christian's counterclaim.

## I. FACTS

The evidence shows that following the death of his father, Isidore Griles, who lived on St. Croix, owned the property equally with his four brothers: Julius Griles, Terrence Griles, Henry Griles and Andrew Griles. Isidore Griles moved from St. Croix in 1940 to serve in the United States Coast Guard. In 1957, he learned that his brothers could no longer afford to pay taxes on the property and informed them that he was assuming their tax obligations and taking over the property. Griles' brothers did not object, and since 1957 he has paid the property taxes.

Griles testified that although he was not present to care for the property, he allowed his cousin to live and store his fishing gear there in exchange for the cousin maintaining it. In addition, Griles' son and daughter cut the grass twice a month and kept the property clean and presentable "so it would look like a property that is being up kept by the owner. . . ."[1] Griles' son similarly testified that he maintained the land, a surrounding privacy fence and a "few buildings there ... that they used to house the [seine net for fishing]. . . ."[2] Although the buildings were destroyed by Hurricane Hugo, Griles' son stated that before the storm the family used the buildings and property regularly as a "sane(sic) yard for fishing purposes. . . ."[3] After Hurricane Hugo, Griles' son had to bring in a truck and backhoe to cleanup the yard.

In response to Griles' evidence, and in support of his own allegation that he owned the property, Christian testified that he purchased the property from Andrew Griles in 1969. According to Christian, at that time he contracted with Andrew Griles to purchase the property for $10,000. As evidence, Christian pre-

---

[1] Tr. at 30.

[2] Tr. at 49.

[3] Tr. at 55.

sented a purchase agreement ostensibly executed by Andrew Griles, a $1,000 check from The Addison Corporation payable to Andrew Griles and several letters between himself and the family of Andrew Griles concerning the alleged sale. Although Christian testified that he paid the full amount of the purchase price, he stated that he could not produce any receipts because they were all destroyed by Hurricane Hugo. And, although Andrew Griles died on March 7, 1976, Christian never obtained a deed from him while he was still living.

Finally, the evidence shows that in 1985, Isidore Griles contacted Christian, who is an attorney, to change the name on the property tax bills to Isidore Griles. In connection with this request, Christian charged Griles $100 and performed a title search on the property. Although this was approximately 15 years after Christian purportedly purchased the property, he informed Griles that his title search revealed the property was owned by Terrence, Andrew and Henry Griles. Prior to his death, Andrew never mentioned to Isidore that he sold the property to Christian, and Christian never took any action to maintain the property.

## II. DISCUSSION

### A. Griles' Claim of Title by Adverse Possession

In the Virgin Islands, title by adverse possession is conclusively presumed upon a showing of "[t]he uninterrupted, exclusive, actual, physical, adverse, continuous, notorious possession of real property under claim or color of title for 15 years or more. . . ." 28 V.I.C. sec. 11. "Simply put, the purpose of [these requirements] is to give the record owner notice that someone else is claiming title to the property. Open and notorious possession contemplates possession that is unconcealed and so conspicuous that it is generally known by the public or by people in the neighborhood. 39 Am. Jur. Proof of Facts 'Adverse Possession' § 8,289 (1984)." *McNamara v. Christian*, 26 V.I. 109, 111 (Terr. Ct. 1991). An adverse claimant is required to prove all the elements of adverse possession by clear and convincing evidence, and the question of whether the claimant has met this burden is for the trier of fact to resolve. *Id.* at 112.

In determining whether a claimant has met his or her burden of establishing title by adverse possession, our courts have looked for

evidence of "acts on land as ordinarily only an owner would do, such as construction of buildings and making of improvements, or the payment of taxes. . . ." *Id.* at 113 (punctuation omitted). Indeed, payment of taxes is compelling evidence of adverse ownership because it unequivocally notifies any true owners that another is claiming title to the land. Also of significance is evidence of "the intention of the disseisor, adequately communicated (either constructively or actually) to the record titleholder. . . ." *Tutein v. Daniels,* 10 V.I. 255, 260 (D.C.V.I. 1973) (citation omitted). A court should likewise consider evidence that the adverse claimant improved or maintained the land and otherwise used it openly and notoriously. See *id.; Emanuel v. Francis,* 21 V.I. 92 (D.C.V.I. 1984).

■ In this case, Griles has presented such clear and convincing evidence of ownership. As stated above, the evidence undisputedly shows that in 1957 Griles actually notified his brothers, the record title holders, that he was taking the property and that he has continuously paid the property taxes since that time, a period now exceeding 40 years. During this time, Griles has ensured that the property and its improvements were properly maintained so that, in his own words "it would look like a property that is being kept by the owner. . . ."[4] And, even after the improvements were destroyed by Hurricane Hugo, Griles did not leave the property a shambles, but rather had his son clean it up. Based on the foregoing, this Court concludes that Griles' possession of the property since 1957 "has been 'uninterrupted, exclusive, actual, physical, adverse, continuous, notorious,' and well in excess of 15 years. The conclusion is, therefore, inescapable that [Griles] is the owner of the parcel of land [at 29 Strand Street, Frederiksted]." *Id.* at 96.

## B. Christian's Claim of Title Based on the Purchase Agreement.

Christian does not claim that he ever received title to the property; rather, he alleges that he has title by adverse possession and under the doctrine of equitable conversion. The Court finds neither claim supported by the evidence.

---

[4] Tr. at 30.

■

The evidentiary requirements for establishing title by adverse possession are stated above and need not be restated. Based on this authority, the Court finds that Christian has not met his burden of establishing the elements of adverse possession by clear and convincing evidence. In fact, although alleged in his counterclaim, Christian failed to present any evidence at trial supporting this claim. Moreover, the evidence was clear that upon performing a title search on the property for Isidore Griles in 1985, Christian failed to disclose that he, Christian, had any interest in the property. Under these circumstances, his purported ownership interest in the property, if any, was certainly not open and notorious.[5]

The Court is similarly troubled by Christian's assertion that he owns the property under the doctrine of equitable conversion. This doctrine recognizes that upon the formation of a contract for the sale of land, the seller and purchaser have an unconditional duty to perform in the future. See Samuel Williston, 7 *Williston on*

---

[5] The Court is compelled to note its ethical concerns with Attorney Christian's conduct in this instance. The evidence clearly shows that Christian and Griles entered into an attorney/client relationship with regard to a title search for property in which Christian asserted an interest. These circumstances presented at least a potential conflict of interest which Christian should have disclosed to his client, Griles.

The American Bar Association's Model Rules for Professional Conduct generally proscribe such conduct. Model Rule 1.7 (b) provides that "[a] lawyer shall not represent a client if the representation of that client may be materially limited . . . by the lawyer's own interests unless: (1) the lawyer reasonably believes the representation will not be adversely affected; and (2) the client consents after consultation. . . ." Similarly, Disciplinary Rule 5-101 (A) provides: "Except after full disclosure, a lawyer shall not accept employment if the exercise of his professional judgment on behalf of his client will be or reasonably may be affected by his own financial, business, property, or personal interests." In this case, the Court is concerned that Christian agreed to perform a title search on the property for Griles, but failed to disclose his own asserted interest in the property. Christian's conflicting interests reasonably may have, and did in fact affect his performance of the title search and his subsequent reporting of the results. Equally troubling is the fact that Christian knew Griles wanted his own name on the property tax bills, presumably to pay the bills, yet failed to disclose his asserted conflicting interest in the property. Such conduct creates at least the appearance that Christian intended to allow Griles to mistakenly pay taxes on property that Christian purportedly owned.

These circumstances also create a potential violation of the Model Rules concerning an attorney's duty to communicate with his or her client. Model Rule 1.4 (b) provides that "[a] lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation." Had Christian fully disclosed the circumstances, including his own alleged interest in the property, Griles could have made an informed decision concerning not only his initial employment of Christian, but also with regard to dealing with Christian's conflicting claim to the property.

*Contracts* § 927 (Baker, Voorhis 3d ed. 1963). Thus, "[i]t is the well settled doctrine of our courts of equity that, under a contract for the sale of lands, the purchaser becomes the equitable owner of the lands, and the seller the equitable owner of the purchase money. . . ." *Id.* at 819.

■ Even assuming the validity of the purchase agreement in this case, however, Christian cannot expect equity to recognize any interest where he has presented no credible evidence that he ever paid the full purchase price. Even if the Court were to accept his testimony that the $1,000 check in evidence was payment toward the purchase price, Christian has not adequately explained his failure to obtain a deed from Andrew Griles after he purportedly paid the full purchase price. Moreover, if Christian considered himself either the legal or equitable owner of the property, then it is inexplicable that he did not reveal his interest to Isidore Griles when he reported the results of his title search. These inconsistencies are too significant to ignore. The Court thus concludes that based on the evidence presented at trial, Christian has no legal or equitable interest in the property.

### III. CONCLUSION

For the reasons given above, the Court concludes that Isidore Griles is the owner of the property. At trial, Griles showed by clear and convincing evidence that he has had uninterrupted, exclusive, actual, physical, adverse, continuous, notorious possession of the property for more than 15 years. Thus, pursuant to 28 V.I.C. sec. 11, Griles is conclusively presumed to own the property. Furthermore, Christian failed to present sufficient evidence that he has any ownership interest in the property, and the Court will not enter judgment protecting such interest.