**RUPERTHA A. ANDREWS, CARLA A. ANDREWS, ANDREA ANDREWS, ALEXIS ANDREWS, CLAIR ANDREWS and ANDRE ANDREWS, Plaintiffs**

**v.**

**CHARLES NATHANIEL and VIRGIL ROBERTS, Defendants**

Civ. No. 759/1994

Territorial Court of the Virgin Islands

Division of St. Croix

January 25, 2000

RENEE D. DOWLING, ESQ., Christiansted, St. Croix, U.S.V.I., *for Plaintiffs*

EDDY RIVERA, ESQ., Christiansted, St. Croix, U.S.V.I., *for Defendants*

CABRET, *Judge*

## MEMORANDUM OPINION

Rupertha Andrews and five of her children sued Virgil Roberts and Charles Nathaniel to quiet their alleged title to Plot 304, Estate Peters Rest, St. Croix, U.S. Virgin Islands ("the property"). In response, Roberts and Nathaniel denied that the Andrews owned the property, and Roberts counterclaimed alleging that he acquired title to the property under a verbal contract for deed.[1] In his counterclaim, Roberts asks that the Court quiet this alleged title. The matter came before the Court for trial without a jury. For the following reasons, the Court finds that the parties are not entitled to the relief they requested in their respective pleadings. Instead, the Court concludes that the contract for deed created a mortgage on the property and that the Andrews are entitled to a judgment of foreclosure.

### I. FACTS

The evidence at trial showed that in 1971 the property was owned by Carl Andrews, the deceased husband of Rupertha Andrews and father of the remaining plaintiffs. In October of 1971, Roberts entered into a verbal agreement with Carl Andrews to purchase the property for $7,500. The parties agreed that Roberts would pay Andrews a $1,500 down payment and monthly installments of an unspecified amount, but did not specify an interest rate.

In 1972, Roberts began constructing two structures on the property: a masonry block house and a wood frame building. Roberts moved onto the property in 1972 or 1973 and lived there until 1977. During this period, Roberts paid Andrews several installments of the purchase price. Roberts testified that whenever Andrews saw him, Andrews asked him for money, and that if he had any cash, he would give it to Andrews. Roberts further stated that if Andrews had a receipt book with him, he would give Roberts a receipt for his payment. Otherwise, Roberts testified,

---

[1] The legal aspects of a contract for deed are discussed in detail below. This type of agreement is also called an installment land contract, long-term land contract, installment sale contract, bond for deed, and land sale contract. *See* RESTATEMENT (THIRD) PROPERTY (MORTGAGES) § 3.4 cmt. a (1997).

Andrews would collect the money and later give him a receipt. Roberts acknowledged that Andrews gave him a receipt for every payment he made on the property.

While it appears that Roberts made several payments to Andrews, on December 8, 1975, Andrews sent Roberts a letter stating that his account was in arrears. Specifically, the letter stated:

> there is a balance [owing] in the amount of $3222.00 as of this date, Dec. 8, 1975. Your account is in arrears in the amount of $2222.00. This makes the entire amount due and payable at this time. You are hereby asked to make necessary payment within 30 calendar days. That is, the principal amount plus 6% interest per annum, else legal action will be taken.[2]

Roberts did not pay the full balance as demanded, but continued paying Andrews installments until Roberts moved stateside in 1977. At this time, Roberts appointed his brother, Wadsworth Roberts, to represent his interests in the property and left the care of the property to his other brother, Condorcet Roberts, and Condorcet's wife, Isola. After Virgil moved, he sent money to Condorcet to pay to Andrews. Virgil testified that he eventually stopped sending money for the payments because "to [his] knowledge [he] already paid off Mr. Andrews."[3] Notwithstanding this testimony, Roberts candidly admitted that he does not know when he finished paying for the property and that he did not maintain any records of his own evidencing the amount he had paid to Andrews. Roberts further stated that he lost many of the receipts that Andrews gave to him for the payments.[4] And, although Roberts insists that he paid the full price, he never demanded a deed from Andrews.

---

[2] Pls.' Ex. 7, Letter from Carl E. Andrews to Virgil Roberts dated Dec. 8, 1975.

[3] Tr. at 79.

[4] Roberts' evidence concerning the status of the his receipts is confusing and lacks credibility. He introduced into evidence copies of 14 receipts. On one occasion he testified that he lost the remaining receipts. On another, he stated that he was not sure what happened to the other receipts. On a third occasion, Roberts explained that when he moved stateside, he "left most of them with [his] brother and [his] sister in law. . . ." Tr. at 89. Even if the Court were to ignore the inconsistencies, it is inexplicable that Roberts would leave a portion of the receipts with family members, while taking other receipts with him.

36

Carl Andrews died on December 19, 1984, and his estate was administered by Rupertha Andrews. At this time, Carl Andrews' records showed that Roberts still owed $2,712 for the property. Rupertha Andrews attempted to contact Roberts to collect the balance due. She testified that although she had no telephone number or address for Roberts, she hand delivered several letters demanding the money to Wadsworth Roberts. The first letter, from the estate's attorney and dated December 31, 1985, states that according to Carl Andrews' records the balance owed under the contract was $2,712. On June 9, 1986, Rupertha Andrews wrote a similar letter to Roberts stating that he still owed $2,712 for the property and that he needed to submit any documentation he had which conflicted with that figure. Another letter from the estate's attorney dated September 6, 1988, states that Rupertha Andrews had made arrangements with the court to honor Roberts' unwritten agreement for the purchase of the property. According to the letter, these arrangements were premised on Roberts paying the remaining balance, which he had not done, and that if did not pay the full price or a substantial payment within the next 30 days, the arrangements would be canceled. Finally, in a letter to Roberts dated January 2, 1991, Rupertha Andrews stated that Roberts still owed a balance of $1,912 and that he would lose a great deal of money if he did not pay the full balance on or before February 14, 1991. Although Wadsworth Roberts acknowledged that Andrews showed him the letters, he denied that she gave him copies, and Virgil Roberts denied that he ever received the letters.

In addition to these efforts to collect the money, on several occasions from 1987 through 1989 Ms. Andrews collected rent from people occupying the premises. Specifically, the evidence shows that during 1987, Ms. Andrews collected four $100 payments from Condorcet Roberts. In 1989, Virgil Roberts started renting the property to Charles Nathaniel, and from March to June of that year Andrews collected four $100 payments from Nathaniel. As of the time of trial, Nathaniel was still renting the property from Roberts.

Rupertha Andrews testified that despite her efforts, she was unable to collect the full amount due under the agreement between Carl Andrews and Roberts. According to Andrews, there is still a balance due of $1,912. On June 9, 1994 a judge of the Territorial

Court of the Virgin Islands entered an adjudication disposing of Carl Andrews' estate. *In Re Estate of Andrews*, Probate No. 36/1985 (Terr. Ct. 1985) (adjudication). The court awarded Plot 304 Estate Peter's Rest to the six plaintiffs here. *Id* at 2. The Andrews' filed the instant complaint to quiet title on the property on September 19, 1994.

Finally, the evidence showed that since Carl Andrews died, Rupertha Andrews and Roberts have both been paying a portion of the taxes assessed against the property. While Andrews has paid the portion of the taxes assessed against the land, Roberts has paid the taxes assessed on the improvements.

## II. DISCUSSION

It is undisputed that the Andrews are the record owners of the property. Accordingly, Roberts' title must be based either on an equitable right to title based upon his paying the purchase price, *see Griles v. Griles*, 39 V.I. 135, 139-140 (Terr. Ct. 1998), or on his claim of title by adverse possession. Because Roberts' claims, if meritorious, would defeat the Andrews' claim of title to the property, the Court will address them before reaching the merits of the Andrews' claims for quiet title and possession.

### A. Roberts' Claim of Title Based on the Purchase Agreement.

■ Roberts asserts that the Court should adjudicate him the sole owner of the property because he paid the full purchase price. Although the Court finds that the parties entered into a contract for Roberts to purchase the property, it disagrees that he paid the full purchase price. The credible evidence showing the amount Roberts paid was presented by the Andrews. This evidence showed that Carl Andrews gave Roberts a receipt for every payment he made under the contract. In establishing the amount due, Rupertha Andrews totaled the amount of those receipts and deducted that sum from the purchase price. It is evident from Roberts' testimony that he only hypothesized that he had paid the full amount based on the length of time that he was making payments. Roberts kept no records of any of his payments and lost most of the receipts that Carl Andrews gave to him. Furthermore, Roberts has not ade-

38

quately explained his failure to obtain a deed from Carl Andrews after he purportedly paid the full purchase price. Moreover, if Roberts had paid the full purchase price, then it is inexplicable that he allowed Rupertha Andrews to collect $800 in $100 installments from his tenants over a three year period. These inconsistencies are too significant to ignore. The Court thus concludes that based on the evidence presented at trial, Roberts has not paid the purchase price for the property and cannot be adjudged the owner on this ground.

## B. Roberts' Claim of Adverse Possession.

■ In the Virgin Islands, title by adverse possession is conclusively presumed upon a showing of "[t]he uninterrupted, exclusive, actual, physical, adverse, continuous, notorious possession of real property under claim or color of title for 15 years or more. . . ." V.I. Code Ann. tit. 28, § 11 (1975). A party asserting title by adverse possession must establish these elements by clear and convincing evidence. *McNamara v. Christian*, 26 V.I. 109, 112 (Terr. Ct. 1991). Although there is no fixed rule or mechanical formula for determining if possession is hostile, "[m]ere possession of the true owner's land will be presumed to be with the owner's permission and in subordination to his title and thus not hostile to it. [Cit.]" *Id.* Similarly, "[w]hen possession has begun under circumstances justifying a finding of the 'permission' of the true owner, such possession cannot acquire the character of adverse possession until the presumption of continued subservience is rebutted." Richard R. Powell, 16 *Powell on Real Property* ¶1013 (f) (ii) (1998). Accordingly, a purchaser's possession under an executory sales contract remains permissive and does not become adverse until full performance of the contract by the purchaser and refusal of the seller to convey or until the purchaser distinctly and unequivocally repudiates the seller's title and the seller knows of such repudiation. *See First Nat. Bank of Wray v. McGinnis*, 819 P.2d 1080, 1084 (Cob. App. 1991) (citing *Leo Egan Land, Co. v. Heelan*, 210 Neb. 263, 313 N.W.2d 682 (Neb. 1981); *Rhorer v. Rhorer's Executor*, 272 S.W.2d 801 (Ky. 1954)). The question of "whether or not possession by an adverse claimant is exclusive, open, notorious, and hostile to the rights of the true owner of the

39

property is a question for the trier of fact. [Cit.]" *McNamara*, 26 V.I. at 112.

■ In this case, the Court, as factfinder, concludes that Roberts has not proven by clear and convincing evidence that his possession of the property met these requirements. Instead, the evidence shows that Roberts' possession began as permissive in 1971 when he entered into a contract for deed with Carl Andrews. Although Roberts did not keep any records and was therefore unable to identify the date he purportedly finished paying for the property, the receipts entered into evidence show that he made a payment on October 1, 1984. Accordingly, his possession was permissive until at least this date. *See McGinnis*, 819 P.2d at 1084. Inasmuch as this payment was less than 15 years ago, the Court concludes that Roberts has not shown by clear and convincing evidence that he adversely possessed the property for 15 years as required by title 28, section 11 of the Virgin Islands Code.[5]

## C. The Andrews' Claims for Quiet Title and Possession

■ Having concluded that Roberts' claims lack merit, it is necessary to determine whether the Andrews are entitled to possession and an adjudication that they are the sole owners of the property.[6] The Andrews claim that because they are the legal owners and Roberts defaulted on the contract for deed, the Court is authorized to rescind the contract and return possession to them.[7] After reviewing the evidence and the applicable authority, the Court concludes that the contract for deed between Carl

---

[5] Because Roberts has adversely possessed the property for less than 15 years prior to the date of this opinion, the Court need not determine if any action by the plaintiffs, such as filing the complaint, interrupted his period of adverse possession. The Court notes, however, that jurisdictions are divided concerning what actions a title owner must take to break the continuous possession of an adverse claimant. Although the law of some jurisdictions provides that commencement of litigation interrupts the continuity of possession, other jurisdictions require that the plaintiff obtain a final judgment recognizing his or her title to the property. See 2 C.J.S. *Adverse Possession* § 191 (1972).

[6] Although Roberts argues that the Andrews' causes of action are barred by the six year statute of limitations for contract actions, *see* V.I. Code Ann. tit. 5, § 31 (3)(A), it is clear that the plaintiffs' claims for a determination of rights and possession of the property are governed by a 20 year limitation period and are therefore timely. *See* §§ 31 (1)(A), 32(b).

[7] The remedy of rescission in this context is one of two conflicting theories of forfeiture. Inasmuch as the Court finds that a forfeiture is clearly not authorized, it will not

40

Andrews and Roberts should be treated as a mortgage, and that because Roberts has defaulted on the terms, a judgment of foreclosure and sale is the appropriate remedy.

The applicable rule of law on this issue is supplied by the Restatement of Property (Mortgages). There are no local laws to the contrary, and title 1, section 4 of the Virgin Islands Code provides:

> The rules of the common law, as expressed in the restatements of the law approved by the American Law Institute, and to the extent not so expressed, as generally understood and applied in the United States, shall be the rules of decision in the courts of the Virgin Islands in cases to which they apply, in the absence of local laws to the contrary.

V.I. Code Ann. tit. 1, § 4 (1995). Under the Restatement, a contract for deed is defined as "a contract for the purchase and sale of real estate under which the purchaser acquires the immediate right to possession of the real estate and the vendor defers delivery of a deed until a later time to secure all or part of the purchase price." Restatement (Third) Property (Mortgages) § 3.4 (a) (1997). The verbal contract at issue falls squarely within this definition, and section 3.4 unequivocally provides that a "contract for deed creates a mortgage." Restatement of Property, *supra* at § 3.4 (b). It is thus clear that the Andrews hold a mortgage on the property and, as stated above, Roberts defaulted on the terms. Under these circumstances, the Andrews are entitled to a judgment of foreclosure and sale on the property. *See* Restatement of Property, *supra* at § 3.4, cmts. b, d, illus. 2; V.I. Code Ann. tit. 28, §§ 531-538 (1996).

█ This remedy, however, does not bar Roberts' equity of redemption. *See* title 28, § 535 (providing that judgment of foreclosure does not bar equity of redemption). To redeem the property, Roberts must pay not only the balance of the purchase price, $1,912, but also nine percent prejudgment interest from the time of

address the legal aspects of this remedy. For a thorough discussion on forfeitures and the other remedies available to aggrieved vendors and purchasers under contracts for deed, *see* 15 Richard R. Powell, *Powell on Real Property*, § 84D.03 (1998).

his last payment on the property in October of 1984 until the present. *See id.* The prejudgment interest is authorized under title 11, section 951 of the Virgin Islands Code, which permits the Court to assess prejudgment interest of nine percent where money is due and "there is a contract and no rate is specified." V.I. Code Ann. tit. 11, § 951 (a) (1), (4) (1998). "While the date that payment becomes due is often disputed, the court has discretion to award prejudgment interest to avoid injustice." *Antilles Ins., Inc. v. James*, 30 V.I. 230, 256 (D.V.I. 1994). The equities here demand such interest, inasmuch as Roberts or his tenants have occupied the property for a significant amount of time without paying the balance of the purchase price or rent to the Andrews. Computing interest from November of 1984, the month following Roberts' last payment, and accounting for the rents that Rupertha Andrews collected from 1987 through 1989, the Court concludes that, in addition to the $1,912 in principal. Roberts owes the Andrews $3,028 in interest.

## IV. CONCLUSION

For the reasons stated above, the Court concludes that the Andrews are the owners of the property, but that they are not entitled to a forfeiture of Roberts' equity interest. Instead, the contract for deed between Roberts and Carl Andrew created a mortgage on the property, and Roberts' default on payments permits the remedy of foreclosure, with Roberts retaining an equity of redemption. The Court will issue an appropriate order.